HECKLER, SECRETARY OF HEALTH AND HUMAN
SERVICES *v.* RINGER ET AL.

No. 82–1772.   Argued February 27, 1984—Decided May 14, 1984

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, BLACKMUN, POWELL, and O'CONNOR, JJ., joined. STEVENS, J., filed an opinion concurring in the judgment in part and dissenting in part, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 627.

*Edwin S. Kneedler* argued the cause for petitioner. With him on the briefs were *Solicitor General Lee, Assistant Attorney General McGrath, Deputy Solicitor General Geller, Anthony J. Steinmeyer*, and *Margaret E. Clark*.

*Malcolm J. Harkins III* argued the cause for respondents. With him on the brief were *Joseph E. Casson* and *Joseph L. Bianculli.**

JUSTICE REHNQUIST delivered the opinion of the Court.

Respondents are individual Medicare claimants who raise various challenges to the policy of the Secretary of Health and Human Services (Secretary) as to the payment of Medi-

---

*\*Eileen P. Sweeney* and *Sally Hart Wilson* filed a brief for the Alliance of Social Security Disability Recipients et al. as *amici curiae* urging affirmance.

care benefits for a surgical procedure known as bilateral carotid body resection (BCBR). The United States District Court for the Central District of California dismissed the action for lack of jurisdiction, finding that in essence respondents are claiming entitlement to benefits for the BCBR procedure and therefore must exhaust their administrative remedies pursuant to 42 U. S. C. § 405(g), before pursuing their action in federal court. The Court of Appeals for the Ninth Circuit reversed and remanded for consideration on the merits. 697 F. 2d 1291 (1982). We granted certiorari to sort out the thorny jurisdictional problems which respondents' claims present, 463 U. S. 1206 (1983), and we now reverse as to all respondents.

## I

Title XVIII of the Social Security Act, 79 Stat. 291, as amended, 42 U. S. C. § 1395 *et seq.*, commonly known as the Medicare Act, establishes a federally subsidized health insurance program to be administered by the Secretary. Part A of the Act, 42 U. S. C. § 1395c *et seq.*, provides insurance for the cost of hospital and related posthospital services, but the Act precludes reimbursement for any "items or services . . . which are not reasonable and necessary for the diagnosis or treatment of illness or injury." § 1395y(a)(1). The Medicare Act authorizes the Secretary to determine what claims are covered by the Act "in accordance with the regulations prescribed by him." § 1395ff(a). Judicial review of claims arising under the Medicare Act is available only after the Secretary renders a "final decision" on the claim, in the same manner as is provided in 42 U. S. C. § 405(g)[1] for old age and disability claims arising under Title II of the Social Security Act. 42 U. S. C. § 1395ff(b)(1)(C).

---

[1] Title 42 U. S. C. § 405(g) provides in part as follows:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in

Pursuant to her rulemaking authority, see 42 U. S. C. §§ 1395hh, 1395ii (incorporating 42 U. S. C. § 405(a)), the Secretary has provided that a "final decision" is rendered on a Medicare claim only after the individual claimant has pressed his claim through all designated levels of administrative review.[2]  First, the Medicare Act authorizes the Secretary to enter into contracts with fiscal intermediaries providing that the latter will determine whether a particular medical service is covered by Part A, and if so, the amount of the reimbursable expense for that service.  42 U. S. C. § 1395h; 42 CFR § 405.702 (1983).  If the intermediary determines that a particular service is not covered under Part A, the claimant can seek reconsideration by the Health Care Financing Administration (HCFA) in the Department of Health and Human Services.  42 CFR §§ 405.710–405.716 (1983). If denial of the claim is affirmed after reconsideration and if the claim exceeds $100, the claimant is entitled to a hearing before an administrative law judge (ALJ) in the same manner as is provided for claimants under Title II of the Act.  42 U. S. C. §§ 1395ff(b)(1)(C), (b)(2); 42 CFR § 405.720 (1983).

---

the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. . . . The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.  The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . . The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions."

[2] The Secretary has recognized one exception which is not applicable here.  She has provided by regulation that when the facts and her interpretation of the law are not in dispute and when the only factor precluding an award of benefits is a statutory provision which the claimant challenges as unconstitutional, the claimant need not exhaust his administrative remedies beyond the reconsideration stage.  42 CFR §§ 405.718–405.718e (1983); 20 CFR §§ 404.923–404.928 (1983).

If the claim is again denied, the claimant may seek review in the Appeals Council. 42 CFR §§ 405.701(c), 405.724 (1983) (incorporating 20 CFR § 404.967 (1983)). If the Appeals Council also denies the claim and if the claim exceeds $1,000, only then may the claimant seek judicial review in federal district court of the "Secretary's final decision." 42 U. S. C. §§ 1395ff(b)(1)(C), (b)(2).

In January 1979, the Secretary through the HCFA issued an administrative instruction to all fiscal intermediaries, instructing them that no payment is to be made for Medicare claims arising out of the BCBR surgical procedure when performed to relieve respiratory distress. See 45 Fed. Reg. 71431–71432 (1980) (reproducing the instruction).[3] Relying on information from the Public Health Service and a special Task Force of the National Heart, Lung and Blood Institute of the National Institutes of Health, *id.*, at 71426, the HCFA explained that BCBR has been "shown to lack [the] general acceptance of the professional medical community" and that "controlled clinical studies establishing the safety and effectiveness of this procedure are needed." *Id.*, at 71431. It concluded that the procedure "must be considered investigational" and not "reasonable and necessary" within the meaning of the Medicare Act. *Ibid.*

Many claimants whose BCBR claims were denied by the intermediaries as a result of the instruction sought review of the denial before ALJs, who were not bound by the Secretary's instructions to the intermediaries. Until October

---

[3] BCBR, first performed in this country in the 1960's, involves the surgical removal of the carotid bodies, structures the size of a rice grain which are located in the neck and which control the diameter of the bronchial tubes. Proponents of the procedure claim that it reduces the symptoms of pulmonary diseases such as asthma, bronchitis, and emphysema. Although the Secretary concluded that BCBR for that purpose is not "reasonable and necessary" within the meaning of the Medicare Act, she did note that the medical community had accepted the procedure as effective for another purpose, the removal of a carotid body tumor in the neck. 45 Fed. Reg. 71431 (1980).

1980, ALJs were consistently ruling in favor of individual BCBR claimants. The Appeals Council also authorized payment for BCRB Part A expenses in a consolidated case involving numerous claimants, see *In re Ferguson*, No. 126–12–3830 (HHS Appeals Council, Oct. 18, 1979), while stressing that its decision applied only to the claimants involved in that case and was not to be cited as precedent in future cases.

In response to the rulings of the ALJs and the Appeals Council, on October 28, 1980, the Secretary through the HCFA issued a formal administrative ruling, intended to have binding effect on the ALJs and the Appeals Council, see 20 CFR § 422.408 (1983), prohibiting them in all individual cases from ordering Medicare payments for BCBR operations occurring after that date. 45 Fed. Reg. 71426–71427 (1980). In the ruling the Secretary noted that she had examined the proceedings in *In re Ferguson*, had consulted with the Public Health Service, and again had concluded that the BCBR procedure was not "reasonable and necessary" within the meaning of the Medicare Act. *Ibid.*

On September 18, 1980, respondents in this case filed a complaint in the District Court for the Central District of California, raising numerous challenges focused on the Secretary's January 1979 instructions to her intermediaries precluding payment for BCBR surgery.[4] On November 7, 1980,

---

[4] Respondents objected to the denial of reimbursement for Part B as well as the Part A expenses of BCBR surgery. Part B of the Medicare Act, 42 U. S. C. § 1395j *et seq.*, establishes a voluntary program of supplemental medical insurance covering expenses not covered by the Part A program, such as reasonable charges for physicians' services, medical supplies, and laboratory tests. Payments for Part B expenses are made by private insurance carriers under contract to the Department of Health and Human Services, 42 U. S. C. § 1395u, and the claimant is entitled to reconsideration of the carrier's initial denial of those claims. 42 CFR §§ 405.807–405.860 (1983). Congress has not, however, provided for judicial review of the denial of Part B claims. See *Schweiker* v. *McClure*, 456 U. S. 188 (1982); *United States* v. *Erika, Inc.*, 456 U. S. 201 (1982). Thus respond-

after the Secretary issued the formal ruling binding on the ALJs and the Appeals Council as well as the intermediaries, respondents amended their complaint to challenge that ruling as well. Respondents relied on 28 U. S. C. § 1331 (federal question), 28 U. S. C. § 1361 (mandamus against a federal official), and 42 U. S. C. § 405(g) (Social Security Act), to establish jurisdiction in the District Court.

The individuals named in the amended complaint, who are respondents before this Court,[5] are four individual Medicare claimants. Their physician, Dr. Benjamin Winter,[6] who has developed a special technique for performing BCBR surgery and who has performed the surgery over 1,000 times, prescribed BCBR surgery for all four respondents to relieve their pulmonary problems. Respondents Sanford Holmes, Norman Webster-Zieber, and Jean Vescio had the surgery before October 28, 1980, and all three filed a claim for reimbursement with their fiscal intermediary. At the time

---

ents seem to concede that to the extent that their claims are characterized as claims for Part B benefits, there is no judicial review of those claims under *McClure* and *Erika*. Brief for Respondents 1, n. 1. Respondents do argue, however, that to the extent that their claims can be characterized as collateral constitutional challenges, see n. 7, *infra*, those constitutional challenges are properly before us. In light of our characterization of respondents' claims essentially as claims for benefits, see text at 614, and the fact that whatever constitutional claims respondents assert are clearly too insubstantial to support subject-matter jurisdiction, see *Hagans* v. *Lavine*, 415 U. S. 528, 536–538 (1974), we view this case as involving only respondents' Part A claims.

[5] Respondents requested certification of a class, App. 12, but the District Court dismissed the complaint before ruling on the class certification question.

[6] Dr. Winter is also named as a plaintiff in the amended complaint, but he is pressing no claims on his own behalf before this Court, serving instead as a representative of BCBR claimants pursuant to 20 CFR § 404.1700 *et seq.* (1983); Brief for Respondents 6, n. 4. Because we find that there is no jurisdiction as to the BCBR claimants whose claims are before this Court, there is of course no jurisdiction as to their representative, Dr. Winter.

that the amended complaint was filed, none of the three had exhausted their administrative remedies, and thus none had received a "final decision" on their claims for benefits from the Secretary. The fourth respondent, Freeman Ringer, informally inquired of the Secretary and learned that BCBR surgery is not covered under the Medicare Act. Thus he has never had the surgery, claiming that he is unable to afford it. App. 32.

The essence of their amended complaint is that the Secretary has a constitutional and statutory obligation to provide payment for BCBR surgery because overwhelmingly her ALJs have ordered payment when they have considered individual BCBR claims. *Id.*, at 9–10. According to the complaint, the Secretary's instructions to the contrary to her intermediaries violate constitutional due process and numerous statutory provisions in that they force eligible Medicare claimants who have had BCBR surgery to pursue individual administrative appeals in order to get payment, even though ALJs overwhelmingly have determined that payment is appropriate. *Id.*, at 16–22. Regarding the Secretary's formal administrative ruling, the complaint asserts that the ruling merely reaffirms the instructions and creates an "additional administrative barrier" to Medicare beneficiaries desiring the BCBR treatment, and that it also is unlawful on numerous substantive and procedural grounds. *Id.*, at 23–25.[7] The

---

[7] In particular respondents contend that the instructions and the formal ruling barring payment for BCBR surgery violate the requirement in 42 U. S. C. § 1395y(a)(1) that payment be made for "reasonable and necessary" medical services and that the policy is arbitrary and capricious under the Administrative Procedure Act (APA), 5 U. S. C. § 706(2), under the provision in 42 U. S. C. § 405(a) authorizing the Secretary to issue "reasonable" rules, and under the Due Process Clause of the Fifth Amendment. They contend that requiring them to pursue administrative remedies in order to obtain BCBR payment violates their rights to prompt administrative action under 5 U. S. C. § 555(b) and § 706(2)(A). Finally, they argue that the Secretary violated the rulemaking requirements of the APA, 5 U. S. C. § 553, in issuing the 1979 instructions and the 1980 formal

complaint seeks a declaration that the Secretary's refusal to find that BCBR surgery is "reasonable and necessary" under the Act is unlawful, an injunction compelling the Secretary to instruct her intermediaries to provide payment for BCBR claims, and an injunction barring the Secretary from forcing claimants to pursue individual administrative appeals in order to obtain payment.  *Id.*, at 9–10, 25–27.

The District Court dismissed the complaint in its entirety for lack of jurisdiction.[8]   It concluded that "[t]he essence of [respondents' claim] . . . is a claim of entitlement [to] benefits for the BCBR procedure," and that any challenges respondents raise to the Secretary's procedures are "inextricably intertwined" with their claim for benefits.   App. to Pet. for Cert. 14a.   Thus the court concluded that 42 U. S. C. § 405(g) with its administrative exhaustion prerequisite provides the sole avenue for judicial review.   Relying on our decision in *Mathews* v. *Eldridge*, 424 U. S. 319, 330–332 (1976), the court concluded that none of respondents' claims are so "collateral" to their overall claim for benefits that the

_____

ruling.   The complaint also stated objections, not pressed before this Court, to the assignment of BCBR claims to an ALJ other than the one who usually considers Dr. Winter's patients' claims, and to the Secretary's assertion of control over the practice of medicine allegedly in violation of constitutional and statutory provisions.

[8] *Amici* point out that the District Court failed to grant respondents leave to amend their complaint to challenge the formal ruling, and that the District Court did not in fact consider the issues raised in the amended complaint.   Brief for the Alliance of Social Security Disability Recipients and the Gray Panthers as *Amici Curiae* 7–8, n. 1.   The amended complaint, however, merely attacked the new ruling on the same grounds as had been asserted to attack the instructions, and the District Court's finding of no jurisdiction fairly can be read to apply to the issues raised in the amended complaint as well.   It is unclear whether respondents contested the District Court's apparent failure formally to grant the amendment, but in any event, the Court of Appeals explicitly considered the issues raised in the amended complaint.   The Solicitor General has not objected in this Court to the Court of Appeals' nor to our consideration of those issues, and we will thus regard any possible objection to have been waived.

exhaustion requirement should be waived as to those claims. Because none of the named respondents have satisfied the exhaustion prerequisite of § 405(g), the court dismissed the complaint.

On appeal the Court of Appeals for the Ninth Circuit reversed. It concluded that the thrust of respondents' claim is that "the Secretary's presumptive rule that the BCBR operation is not reasonable and necessary was an unlawful administrative mechanism for determining awards of benefits." 697 F. 2d, at 1294. The Court of Appeals concluded that to the extent that respondents are seeking to invalidate the Secretary's *procedure* for determining entitlement to benefits, those claims are cognizable without the requirement of administrative exhaustion under the federal-question statute, 28 U. S. C. § 1331, and the mandamus statute, 28 U. S. C. § 1361. 697 F. 2d, at 1294.

The Court of Appeals agreed with the District Court that respondents also had raised *substantive* claims for benefits, in that they had sought an injunction requiring the Secretary to declare that BCBR is reasonable and necessary under the Act. In the Court of Appeals' view, the fact that respondents had not sought an actual award of benefits in their complaint did not alter the court's characterization of a portion of their claim as essentially a claim for benefits. *Ibid.* Acknowledging that § 405(g) with its exhaustion prerequisite provides the only jurisdictional basis for seeking judicial review of claims for benefits, the court nonetheless concluded that the District Court had erred in requiring respondents to exhaust their administrative remedies in this case. Relying on our opinions in *Weinberger* v. *Salfi,* 422 U. S. 749 (1975), and *Mathews* v. *Eldridge, supra,* the Court of Appeals concluded that exhaustion would be futile for respondents and that it may not fully compensate them for the injuries they assert because they seek payment without the prejudice— and the necessity of appeal—resulting from the existence of the instructions and the rule. 697 F. 2d, at 1294–1296. Because we disagree with the Court of Appeals' characteriza-

tion of the claims at issue in this case and its reading of our precedents, we now reverse.

## II

Preliminarily, we must point out that, although the Court of Appeals seemed not to have distinguished them, there are in fact two groups of respondents in this case. Respondents Holmes, Vescio, and Webster-Zieber constitute one group of respondents, those who have had BCBR surgery before October 28, 1980, and who have requested reimbursement at some, but not all, levels of the administrative process. Although the Court of Appeals did not seem to realize it, there is no dispute that the Secretary's formal administrative ruling simply does not apply to those three respondents' claims for reimbursement for their BCBR surgery.[9] Their claims only make sense then if they are understood as challenges to the Secretary's instructions to her intermediaries, instructions which resulted in those respondents' having to pursue administrative remedies in order to get payment. They have standing to challenge the formal ruling as well only because, construing their complaint liberally, they argue that the existence of the formal rule creates a presumption

---

[9] The Secretary's formal ruling states:

"*Effective Date:* As explained above, we have previously issued [a] policy in manual instructions excluding this service from Medicare coverage. However, since ALJs and the Appeals Council have ruled in several cases that claims for these services are payable, it is possible that some beneficiaries, relying on these rulings, have proceeded to have the operation performed in expectation of Medicare payment. In fairness to those beneficiaries, we are making the ruling effective for services furnished after the date of publication [October 28, 1980]." 45 Fed. Reg. 71427 (1980).

One ALJ already expressly has held that the regulation is inapplicable to claimants whose BCBR surgery was performed before October 28, 1980. *In re Benjamin Winter, M. D., Representative for 132 Claimants* (SSA Office Hearing App., Feb. 27, 1982). Dr. Winter pursued that case administratively during the pendency of this litigation on behalf of several of the named respondents and other BCBR claimants. See n. 12, *infra.* See also Tr. of Oral Arg. 16–17.

against payment of their claims in the administrative process, even though the rule does not directly apply to bar their claims. The relief respondents request is that the Secretary change her policy so as to allow payment for BCBR surgery so that respondents simply will not have to resort to the administrative process.

It seems to us that it makes no sense to construe the claims of those three respondents as anything more than, at bottom, a claim that they should be paid for their BCBR surgery. Arguably respondents do assert objections to the Secretary's "procedure" for reaching her decision—for example, they challenge her decision to issue a generally applicable rule rather than to allow individual adjudication, and they challenge her alleged failure to comply with the rulemaking requirements of the APA in issuing the instructions and the rule. We agree with the District Court, however, that those claims are "inextricably intertwined" with respondents' claims for benefits. Indeed the relief that respondents seek to redress their supposed "procedural" objections is the invalidation of the Secretary's current policy and a "substantive" declaration from her that the expenses of BCBR surgery are reimbursable under the Medicare Act. We conclude that all aspects of respondents' claim for benefits should be channeled first into the administrative process which Congress has provided for the determination of claims for benefits. We, therefore, disagree with the Court of Appeals' separation of the particular claims here into "substantive" and "procedural" elements. We disagree in particular with its apparent conclusion that simply because a claim somehow can be construed as "procedural," it is cognizable in federal district court by way of federal-question jurisdiction.

The third sentence of 42 U. S. C. § 405(h),[10] made applicable to the Medicare Act by 42 U. S. C. § 1395ii, provides

---

[10] That provision reads as follows:

"The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to the hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal,

that § 405(g), to the exclusion of 28 U. S. C. § 1331, is the sole avenue for judicial review for all "claim[s] arising under" the Medicare Act. See *Weinberger* v. *Salfi, supra,* at 760–761. Thus, to be true to the language of the statute, the inquiry in determining whether § 405(h) bars federal-question jurisdiction must be whether the claim "arises under" the Act, not whether it lends itself to a "substantive" rather than a "procedural" label. See *Mathews* v. *Eldridge,* 424 U. S., at 327 (recognizing that federal-question jurisdiction is barred by 42 U. S. C. § 405(h) even in a case where claimant is challenging the administrative *procedures* used to terminate welfare benefits).

In *Weinberger* v. *Salfi, supra,* at 760–761, we construed the "claim arising under" language quite broadly to include any claims in which "both the standing and the substantive basis for the presentation" of the claims is the Social Security Act. In that case we held that a constitutional challenge to the duration-of-relationship eligibility statute pursuant to which the claimant had been denied benefits, was a "claim arising under" Title II of the Social Security Act within the meaning of 42 U. S. C. § 405(h), even though we recognized that it was in one sense also a claim arising under the Constitution.

Under that broad test, we have no trouble concluding that all aspects of respondents Holmes', Vescio's, and Webster-Zieber's challenge to the Secretary's BCBR payment policy "aris[e] under" the Medicare Act. It is of no importance that respondents here, unlike the claimants in *Weinberger* v. *Salfi,* sought only declaratory and injunctive relief and not an actual award of benefits as well. Following the declaration which respondents seek from the Secretary—that BCBR surgery is a covered service—only essentially ministerial details will remain before respondents would receive reimburse-

_____

or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter." 42 U. S. C. § 405(h).

ment. Had our holding in *Weinberger* v. *Salfi* turned on the fact that claimants there did seek retroactive benefits, we might well have done as the dissent in that case suggested and held that § 405(h) barred federal-question jurisdiction only over claimants' specific request for benefits, and not over claimants' declaratory and injunctive claims as well. See 422 U. S., at 798–799, and n. 13 (BRENNAN, J., dissenting). Thus we hold that the Court of Appeals erred in concluding that any portion of Holmes', Vescio's, or Webster-Zieber's claims here can be channeled into federal court by way of federal-question jurisdiction.

The Court of Appeals also relied on the mandamus statute as a basis for finding jurisdiction over a portion of those three respondents' claims. We have on numerous occasions declined to decide whether the third sentence of § 405(h) bars mandamus jurisdiction over claims arising under the Social Security Act, either because we have determined that jurisdiction was otherwise available under § 405(g), see *Califano* v. *Yamasaki*, 442 U. S. 682, 698 (1979); *Mathews* v. *Eldridge*, *supra*, at 332, n. 12, or because we have determined that the merits of the mandamus claim were clearly insubstantial, *Norton* v. *Mathews*, 427 U. S. 524, 528–533 (1976). We need not decide the effect of the third sentence of § 405(h) on the availability of mandamus jurisdiction in Social Security cases here either.

Assuming without deciding that the third sentence of § 405(h) does not foreclose mandamus jurisdiction in all Social Security cases, see generally *Dietsch* v. *Schweiker*, 700 F. 2d 865, 867–868 (CA2 1983); *Ellis* v. *Blum*, 643 F. 2d 68, 78–82 (CA2 1981), the District Court did not err in dismissing respondents' complaint here because it is clear that no writ of mandamus could properly issue in this case. The common-law writ of mandamus, as codified in 28 U. S. C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty. See *Kerr* v. *United*

*States District Court,* 426 U. S. 394, 402–403 (1976) (discussing 28 U. S. C. § 1651); *United States ex rel. Girard Trust Co.* v. *Helvering,* 301 U. S. 540, 543–544 (1937).

Here respondents clearly have an adequate remedy in § 405(g) for challenging all aspects of the Secretary's denial of their claims for payment for the BCBR surgery, including any objections they have to the instructions or to the ruling if either ultimately should play a part in the Secretary's denial of their claims. The Secretary's decision as to whether a particular medical service is "reasonable and necessary" and the means by which she implements her decision, whether by promulgating a generally applicable rule or by allowing individual adjudication, are clearly discretionary decisions. See 42 U. S. C. § 1395ff(a); see also *Heckler* v. *Campbell,* 461 U. S. 458, 467 (1983).

Thus § 405(g) is the only avenue for judicial review of respondents' Holmes', Vescio's, and Webster-Zieber's claims for benefits, and, when their complaint was filed in District Court, each had failed to satisfy the exhaustion requirement that is a prerequisite to jurisdiction under that provision. We have previously explained that the exhaustion requirement of § 405(g) consists of a nonwaivable requirement that a "claim for benefits shall have been presented to the Secretary," *Mathews* v. *Eldridge,* 424 U. S., at 328, and a waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant. *Ibid.* All three respondents satisfied the nonwaivable requirement by presenting a claim for reimbursement for the expenses of their BCBR surgery, but none satisfied the waivable requirement.

Respondents urge us to hold them excused from further exhaustion and to hold that the District Court could have properly exercised jurisdiction over their claims under § 405(g). We have held that the Secretary herself may waive the exhaustion requirement when she deems further exhaustion futile, *Mathews* v. *Diaz,* 426 U. S. 67, 76–77 (1976);

*Weinberger* v. *Salfi*, 422 U. S., at 766–767. We have also recognized that in certain special cases, deference to the Secretary's conclusion as to the utility of pursuing the claim through administrative channels is not always appropriate. We held that *Mathews* v. *Eldridge, supra*, at 330–332, was such a case, where the plaintiff asserted a procedural challenge to the Secretary's denial of a pretermination hearing, a claim that was wholly "collateral" to his claim for benefits, and where he made a colorable showing that his injury could not be remedied by the retroactive payment of benefits after exhaustion of his administrative remedies.

The latter exception to exhaustion is inapplicable here where respondents do not raise a claim that is wholly "collateral" to their claim for benefits under the Act, and where they have no colorable claim that an erroneous denial of BCBR benefits in the early stages of the administrative process will injure them in a way that cannot be remedied by the later payment of benefits. And here, it cannot be said that the Secretary has in any sense waived further exhaustion. In the face of the Secretary's vigorous disagreement, the Court of Appeals concluded that the Secretary's formal ruling denying payment for BCBR claims rendered further exhaustion by respondents futile. But as we have pointed out above, the administrative ruling is not even applicable to respondents' claims because they had their surgery before October 28, 1980. We therefore agree with the Secretary that exhaustion is in no sense futile for these three respondents and that the Court of Appeals erred in second-guessing the Secretary's judgment.[11]

---

[11] Respondents' reliance on *Mathews* v. *Diaz*, 426 U. S. 67 (1976), is unavailing. In that case, plaintiffs challenged the constitutionality of the duration of residency requirement for enrollment in the Part B Medicare Program. We concluded that the Secretary had waived further exhaustion because he had stipulated that the plaintiffs' applications would be denied on the basis of the challenged provision, and because he had stipulated that the only issue before the courts was the constitutionality of the

Respondents also argue that there would be a presumption against them as they pursue their administrative appeals because of the very existence of the Secretary's instructions and her formal ruling and thus that exhaustion would not fully vindicate their claims. The history of this litigation as recited to us by respondents belies that conclusion. Indeed, according to respondents themselves, in every one of 170 claims filed with ALJs between the time of the Secretary's instructions to her intermediaries and the filing of this lawsuit, before the formal ruling became effective, ALJs allowed recovery for BCBR claims. Brief for Respondents 3. In promulgating the formal ruling, the Secretary took pains to exempt from the scope of the ruling individuals in respondents' position who may have had the surgery relying on the favorable ALJ rulings. 45 Fed. Reg. 71427 (1980). Although respondents would clearly prefer an immediate appeal to the District Court rather than the often lengthy administrative review process, exhaustion of administrative remedies is in no sense futile for these respondents, and they, therefore, must adhere to the administrative procedure which Congress has established for adjudicating their Medicare claims.[12]

---

provision, an issue beyond the Secretary's competence. *Id.*, at 76–77. Here, however, the disputed question of coverage for BCBR surgery is peculiarly within the Secretary's competence, and the formal ruling, which respondents liken to the stipulated denial of plaintiffs' applications in *Diaz*, is not even applicable to their claims.

[12] We noted in *Weinberger* v. *Salfi*, 422 U. S. 749, 765 (1975), that the purpose of the exhaustion requirement is to prevent "premature interference with agency processes" and to give the agency a chance "to compile a record which is adequate for judicial review." This case aptly demonstrates the wisdom of Congress' exhaustion scheme. Several respondents in this case pursued their administrative remedies during the pendency of this litigation, see n. 9, *supra,* and the claims of respondents Holmes and Webster-Zieber were denied on grounds not even related to the instructions and rule which they now seek to challenge in federal court. Further, the ALJ determined that the formal rule was not even applicable to re-

## III

Respondent Ringer is in a separate group from the other three respondents in this case. He raises the same challenges to the instructions and to the formal ruling as are raised by the other respondents. His position is different from theirs, however, because he wishes to have the operation and claims that the Secretary's refusal to allow payment for it precludes him from doing so. Because Ringer's surgery, if he ultimately chooses to have it, would occur after the effective date of the formal ruling, Ringer's claim for reimbursement, unlike that of the others, would be covered by the formal ruling. Ringer insists that, just as in the case of the other three respondents, the only relief that will vindicate his claim is a declaration that the formal ruling, and presumably the instructions as well, are invalid and an injunction compelling the Secretary to conclude that BCBR surgery is "reasonable and necessary" within the meaning of the Medicare Act. It is only after that declaration and injunction, Ringer insists, that he will be assured of payment and thus only then that he will be able to have the operation.

Again, regardless of any arguably procedural components, we see Ringer's claim as essentially one requesting the payment of benefits for BCBR surgery, a claim cognizable only under § 405(g). Our discussion of the unavailabilty of mandamus jurisdiction over the claims of the other three respondents is equally applicable to Ringer. As to § 1331 jurisdiction, as with the other three respondents, all aspects of Ringer's claim "aris[e] under" the Medicare Act in that the Medicare Act provides both the substance and the standing for Ringer's claim, *Weinberger* v. *Salfi*, 422 U.S., at 760–761. Thus, consistent with our decision with respect to the other three respondents, we hold that §§ 1331 and 1361 are not

spondent Vescio's claim because of the date of her surgery, and he thus concluded that additional evidence was necessary to determine whether she was entitled to payment.

available as jurisdictional bases for vindicating Ringer's claim.

Ringer's situation does differ from that of the other three respondents in one arguably significant way. Because he has not yet had the operation and thus has no reimbursable expenses, it can be argued that Ringer does not yet have a "claim" to present to the Secretary and thus that he does not have a "claim arising under" the Medicare Act so as to be subject to § 405(h)'s bar to federal-question jurisdiction. The argument is not that Ringer's claim does not "arise under" the Medicare Act as we interpreted that term in *Weinberger* v. *Salfi;* it is rather that it has not yet blossomed into a "claim" cognizable under § 405(g). We find that argument superficially appealing but ultimately unavailing.

Although it is true that Ringer is not seeking the immediate payment of benefits, he is clearly seeking to establish a right to future payments should he ultimately decide to proceed with BCBR surgery. See *Attorney Registration & Disciplinary Comm'n* v. *Schweiker*, 715 F. 2d 282, 287 (CA7 1983). The claim for future benefits must be construed as a "claim arising under" the Medicare Act because any other construction would allow claimants substantially to undercut Congress' carefully crafted scheme for administering the Medicare Act.

If we allow claimants in Ringer's position to challenge in federal court the Secretary's determination, embodied in her rule, that BCBR surgery is not a covered service, we would be inviting them to bypass the exhaustion requirements of the Medicare Act by simply bringing declaratory judgment actions in federal court before they undergo the medical procedure in question. *Ibid.* Congress clearly foreclosed the possibility of obtaining such advisory opinions from the Secretary herself, requiring instead that a claim could be filed for her scrutiny only after the medical service for which payment is sought has been furnished. See 42 U. S. C. §§ 1395d(a), 1395f(a); 42 CFR §§ 405.1662–495.1667 (1983). Under the

guise of interpreting the language of § 405(h), we refuse to undercut that choice by allowing federal judges to issue such advisory opinions. Thus it is not the case that Ringer has no "claim" cognizable under § 405(g); it is that he must pursue his claim under that section in the manner which Congress has provided. Because Ringer has not given the Secretary an opportunity to rule on a concrete claim for reimbursement, he has not satisfied the nonwaivable exhaustion requirement of § 405(g). The District Court, therefore, had no jurisdiction as to respondent Ringer.

With respect to our holding that there is no jurisdiction pursuant to § 1331, the dissent argues that § 405(h) is not a bar to § 1331 jurisdiction because Ringer's challenge to the Secretary's rule is "arising under" the Administrative Procedure Act, not the Medicare Act. *Post*, at 633. But the dissent merely resurrects an old argument that has already been raised and rejected before by this Court in *Weinberger* v. *Salfi, supra.* As we have already noted earlier, *supra,* at 615, the Court rejected the argument that the claimant in *Salfi* could bring his constitutional challenge to a Social Security Act provision in federal court pursuant to § 1331 because the claim was "arising under" the Constitution, not the Social Security Act. Ringer's claim may well "aris[e] under" the APA in the same sense that Salfi's claim arose under the Constitution, but we held in *Salfi* that the constitutional claim was nonetheless barred by § 405(h). It would be anomalous indeed for this Court to breathe life into the dissent's already discredited statutory argument in order to give greater solicitude to an APA claim than the Court thought the statute allowed it to give to the *constitutional* claim in *Salfi.*

The dissent suggests that *Salfi* is distinguishable on two grounds. First, it seems to suggest that *Salfi* is distinguishable because, after rejecting the claim that there was jurisdiction under § 1331, the Court in *Salfi* went on to conclude that there was jurisdiction under § 405(g). *Post*, at 633–635. We fail to see how the Court's conclusion that the claimants in *Salfi* had satisfied all of the prerequisites to jurisdiction

under § 405(g) has anything at all to do with the proper construction of § 405(h). If the dissent is suggesting that the meaning of § 405(h) somehow shifts depending on whether a court finds that the waivable and nonwaivable requirements of § 405(g) are met in any given case, that suggestion is simply untenable.

Second, the dissent seems to suggest that *Salfi* is distinguishable because the claimants there appended a claim for benefits to their claim for declaratory and injunctive relief as to the unconstitutionality of the statute. *Post*, at 635–637. Again, as we have already pointed out in text, *supra*, at 615–616, there is no indication in *Salfi* that our holding in any way depended on the fact that the claimants there sought an award of benefits. Furthermore, today we explicitly hold that our conclusion that the claims of Holmes, Vescio, and Webster-Zieber are barred by § 405(h) is in no way affected by the fact that those respondents did not seek an award of benefits. *Supra*, at 615–616. If the dissent finds that the fact that Ringer does not expressly ask that he be paid benefits for his future surgery[18] is crucial to its conclusion that his claims are not barred under § 405(h), it is difficult to see why the dissent also does not conclude that the claims of the other three respondents are not barred by § 405(h) for the same reason.

The crux of the dissent's position as to § 1331 jurisdiction then seems to be that Ringer's claims do not "arise under" the Medicare Act so as to be barred by § 405(h) because Ringer and his surgeon have not yet filed, and indeed cannot yet file, a concrete claim for reimbursement because Ringer has not yet had BCBR surgery. Thus, in the dissent's view, if a clamaint wishes to claim entitlement to benefits in ad-

---

[18] Of course, as we have pointed out, Ringer and the other respondents come quite close to asking just that in asking the federal court to invalidate the Secretary's rule and to compel the Secretary to declare BCBR surgery "reasonable and necessary" within the meaning of the Medicare Act. *Supra*, at 610–611, 614, 620; Brief for Respondents 1, 10; App. 25–26.

vance of undergoing the procedure for which payment is sought, his claim does not "arise under" the Medicare Act and hence he is not precluded by § 405(h) from resorting to federal-question jurisdiction. But that argument amounts to no more than an assertion that the substance of Ringer's claim somehow changes and "arises under" another statute simply because he has not satisfied the procedural prerequisites for jurisdiction which Congress has prescribed in § 405(g).

The substance of Ringer's claim is identical to the substance of the claims of the other three respondents, claims whose substance and standing we have earlier concluded are derived from the Medicare Act. *Supra,* at 615–616. As we have earlier noted, *supra,* at 620, the fairest reading of the rather confusing amended complaint is that all respondents, including Ringer, wish both to invalidate the Secretary's rule and her instructions *and* to replace them with a new rule that allows them to get payment for BCBR surgery. While it is true that all of the respondents complain about the presumptive nature of the Secretary's current rule, it is equally true that they all—including Ringer—complain about the burden of exhaustion of administrative remedies and that they all seek relief that will allow them to receive benefits yet bypass that administrative process altogether. App. 9–10; n. 13, *supra.* With respect to the other three respondents, we hold today that all their claims—identical to Ringer's— are inextricably intertwined with what we hold is in essence a claim for benefits and that § 1331 jurisdiction over all their claims is barred by § 405(h). *Supra,* at 614–616. We decline to hold that the same claim asserted by Ringer should somehow be characterized in a different way for the purpose of § 1331 jurisdiction simply because Ringer has not satisfied the prerequisites for jurisdiction under § 405(g).

With respect to our holding that Ringer has not satisfied the nonwaivable requirement of § 405(g), the dissent adopts the remarkable view that the Secretary's promulgation of a

rule regarding BCBR surgery satisfies that nonwaivable requirement. The dissent would thus open the doors of the federal courts in the first instance to everyone—those who can and those who cannot afford to pay their surgeons without reliance on Medicare—who thinks that he might be eligible to participate in the Medicare program, who thinks that someday he might wish to have some kind of surgery, and who thinks that this surgery might somehow be affected by a rule that the Secretary has promulgated. Of course, it is of no great moment to the dissent that after adjudicating his claim in federal court, that individual may simply abandon his musings about having surgery. And it is of no great moment to the dissent that Congress, who surely could have provided a scheme whereby claimants could obtain declaratory judgments about their entitlement to benefits, has instead expressly set up a scheme that requires the presentation of a concrete claim to the Secretary.

The dissent's declaratory judgment notion effectively ignores the scheme which Congress has created and does nothing less than change the whole character of the Medicare system. The dissent argues that its frustration of Congress' scheme can be limited to the situation where the Secretary has promulgated a rule, or in the dissent's words, where she has "already issued an advisory opinion" about a certain surgical procedure in the form of a generally applicable rule. *Post*, at 642–643. Such a quest for restraint is admirable, but the logic of the dissent's position makes the quest futile. The dissent's concern in this case is with those perhaps millions of people, like Ringer, who desire some kind of controversial operation but who are unable to have it because their surgeons will not perform the surgery without knowing in advance whether they will be victorious in challenging the Secretary's rule in the administrative or later in the judicial process. *Post,* at 629–630, 643. But that concern exists to the same degree with any claimant, even in the absence of a generally applicable ruling by the Secretary. For example, a

surgeon called upon to perform any kind of surgery for a pro-
spective claimant would, in the best of all possible worlds,
wish to know in advance whether the surgery is "reasonable
and necessary" within the meaning of the Medicare Act.
And indeed some such surgeons may well decline to perform
the requested surgery because of fear that the Secretary will
not find the surgery "reasonable and necessary" and thus will
refuse to reimburse them. The logic of the dissent's position
leads to the conclusion that those individuals, as well as
Ringer, are entitled to an advance declaration so as to ensure
them the opportunity to have the surgery that they desire.

Furthermore, the solution that the dissent provides for
Ringer—allowing him to challenge the Secretary's rule in
federal court—hardly solves the problem that the dissent
identifies. It is mere speculation to assume, as the dissent
does, *post*, at 636–637, that a surgeon who is unwilling to per-
form surgery because of the existence of a rule will all of a
sudden be willing to perform the surgery if the rule is struck
down. That surgeon still faces a risk of not being paid in the
administrative process, a risk that may well cause him to
refuse to perform the surgery. The only sure way to ensure
that all people desiring surgery are able to have it is to allow
all of them to go into federal court or into the administrative
process in advance of their surgery and get declarations of
entitlement. Surely not even the dissent could sanction such
a wholesale restructuring of the Medicare system in the face
of clear congressional intent to the contrary.

## IV

We hold that the District Court was correct in dismiss-
ing the complaint as to all respondents. Respondents urge
affirmance of the Court of Appeals because "elderly, ill
and disabled citizens who [sic] Congress intended to benefit
from Social Security Act programs actually have suffered
financially as well as physically" from the Secretary's con-
clusion that BCBR surgery is never "reasonable and neces-

sary." Brief for Respondents 31. But respondents Holmes, Webster-Zieber, and Vescio are not subject to the Secretary's formal ruling and stood the chance of prevailing in administrative appeals. Respondent Ringer has not undergone the procedure and could prevail only if federal courts were free to give declaratory judgments to anyone covered by Medicare as to whether he would be entitled to reimbursement for a procedure if he decided later to undergo it.

In the best of all worlds, immediate judicial access for all of these parties might be desirable. But Congress, in § 405(g) and § 405(h), struck a different balance, refusing declaratory relief and requiring that administrative remedies be exhausted before judicial review of the Secretary's decisions takes place. Congress must have felt that cases of individual hardship resulting from delays in the administrative process had to be balanced against the potential for overly casual or premature judicial intervention in an administrative system that processes literally millions of claims every year.[14] If the balance is to be struck anew, the decision must come from Congress and not from this Court.

The judgment of the Court of Appeals is accordingly

*Reversed.*

JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, concurring in the judgment in part and dissenting in part.

The Medicare Act is designed to insure the elderly against the often crushing costs of medical care.[1] To that end, § 1862(a)(1) of the Act guarantees payment of all expenses "reasonable and necessary for the diagnosis or treatment of

---

[14] In 1982 there were 48 million claims filed under Part A of the Medicare Program. Bureau of Program Operations, HCFA, U. S. Department of Health and Human Services, B. P. O. Part A, Intermediary Workload Report (May 1983).

[1] See, *e. g.,* H. R. Rep. No. 213, 89th Cong., 1st Sess., 20–22, 63–64 (1965); S. Rep. No. 404, 89th Cong., 1st Sess., 73–74 (1965).

illness or injury."[2]  The Secretary has issued a formal ruling stating that she will not pay the costs of bilateral carotid body resection (BCBR) surgery performed after October 28, 1980, in order to treat pulmonary distress because for that purpose BCBR is neither medically reasonable nor necessary.  45 Fed. Reg. 71426–71427 (1980).  Respondents contend that the rule was not adopted in accord with the relevant limitations on the Secretary's authority.

The three respondents who have undergone the BCBR procedure all did so prior to October 28, 1980.  The Secretary's ruling as of that date does not prevent them from obtaining payment for BCBR, and in fact states that they may prevail if they demonstrate that they underwent the procedure in reliance on previous rulings indicating that BCBR is reimbursable.[3]  I agree with the Court that the Secretary's ruling does not foreclose relief for them and that it is therefore appropriate to require them to exhaust their administrative remedies.  If, after the administrative process is complete, these respondents are dissatisfied with the Secretary's decision, they may obtain judicial review pursuant to § 205(g) of the Social Security Act.[4]

---

[2] "Notwithstanding any other provision of this subchapter, no payment may be made under part A or part B for any expenses incurred for items or services—

"(1) which are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member," 42 U. S. C. § 1395y(a)(1).

[3] "As explained above, we have previously issued [a] policy in manual instructions excluding this service from Medicare coverage.  However, since [Administrative Law Judges] and the Appeals Council have ruled in several cases that claims for these services are payable, it is possible that some beneficiaries, relying on these rulings, have proceeded to have the operation performed in expectation of Medicare payment.  In fairness to those beneficiaries, we are making the ruling effective for services furnished after the date of publication."  45 Fed. Reg. 71427 (1980).

[4] In pertinent part that section provides:

"(g) Judicial review

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy,

The claim of respondent Ringer, however, stands on a different footing. The complaint indicates that Ringer, "who is 68 years of age, suffers from severe, chronic obstructive airways disease, (i. e., severe emphysema), cor pulmonale and right heart strain," and that he is eligible for Medicare benefits and needs the operation[5] but cannot afford it unless the Secretary agrees to pay for it.[6]  App. 10–11.  The Secretary, however, has formally ruled that she will not pay for it, and has taken the position that Ringer cannot challenge her ruling, except in a proceeding seeking reimbursement for the cost of the surgery.  Yet precisely because Ringer cannot afford the surgery, the Secretary will not permit him to file a claim for reimbursement, since he has incurred no expense that can be reimbursed.

Today, the majority holds that Ringer must have the operation that he cannot afford and cannot obtain because of the Secretary's ruling before he can challenge that ruling.  As I understand it, the Court concludes that there is no federal-question jurisdiction over this case under 28 U. S. C. § 1331[7]

---

may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia."  42 U. S. C. § 405(g).

[5] The Secretary stipulated that each of the respondents would testify that he has been diagnosed as suffering from severe lung disease, that each has experienced severe breathing difficulties as a symptom of his or her illness, and that BCBR surgery has been prescribed to alleviate the symptoms of their lung diseases.  The respondents are all Medicare beneficiaries eligible for statutory benefits.  App. 32.

[6] The Secretary stipulated that Ringer will testify that he has had prescribed and desires to undergo BCBR surgery but is unable to pay the cost thereof.  Ibid.

[7] That section provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

because Ringer has a "claim arising under the Medicare Act," *ante*, at 621, which cannot be asserted under § 1331 by virtue of § 205(h) of the Social Security Act.[8]   Therefore, the Court continues, jurisdiction over this case can be exercised if at all under § 205(g).   Yet the Court also holds that there is no jurisdiction under § 205(g) because Ringer has not submitted a claim for reimbursement.   Of course, the reason he has not filed such a claim is that there is nothing to reimburse—he has incurred no expenses because he cannot afford to do so. Without anything to reimburse, the Secretary refuses to provide a hearing on what she and the Court believe to be a nonexistent "claim."   Thus the only way Ringer can pursue his § 205(g) remedy is by doing something that the Secretary will not let him do.

Thus, it would seem, Ringer both does and does not have a claim which arises under the Medicare Act.   He cannot file a claim under the Medicare Act until after he has the operation; he cannot have the operation unless he can challenge the Secretary's ruling; and he cannot challenge that ruling except in an action seeking judicial review of the denial of a claim under the Medicare Act.   This one-eyed procedural analysis frustrates the remedial intent of Congress as plainly as it frustrates this litigant's plea for a remedy.   The cruel irony is that a statute designed to help the elderly in need of medical assistance is being construed to protect from administrative absolutism only those wealthy enough to be able to afford an operation and then seek reimbursement.

---

[8] That subsection provides:

"Finality of Secretary's decision

"The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing.   No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided.   No action against the United States, the Secretary, or any officer or employee thereof shall be brought under sections 1331 or 1346 of title 28 to recover on any claim arising under this subchapter."   42 U. S. C. § 405(h).

The Court's mistaken analysis of Ringer's claim stems from its failure to recognize that the jurisdictional limitation in § 205(h) refers only to actions "to recover on any claim arising under this subchapter"—claims that are within the jurisdictional grant in § 205(g). Section 205(h) is simply inapplicable to a claim that cannot be asserted in an action under § 205(g), and hence does not preclude the assertion of jurisdiction over such a claim under § 1331.

## I

A careful reading of the plain language of the relevant statutes indicates that the statutory scheme does not preclude jurisdiction over Ringer's challenge to the Secretary's ruling under 28 U. S. C. § 1331. That is because the preclusive provision on which the Court relies, § 205(h), simply does not apply to Ringer's claim.[9]

Section 1869(a) of the Medicare Act provides that the determination whether an individual is entitled to Medicare benefits shall be made by the Secretary pursuant to prescribed regulations.[10] Since the Secretary and the Court agree that Ringer has submitted no "claim" on which the Sec-

---

[9] The Court's analysis is confined to the question whether Ringer's action is one "arising under" the Medicare Act; it never attempts to construe the immediately preceding words in § 205(h): "any claim to recover." See *ante*, at 621–624. The majority thereby is able to attack a straw man, since by focusing only on the words "arising under" it avoids the question of how Ringer can have "any claim to recover arising under" that Act when he cannot submit any claim for Medicare benefits because he cannot afford the operation. Since Ringer cannot have the operation and is not seeking reimbursement, he has nothing on which he can recover. When the statute is read as a whole the flaw in the Court's analysis becomes apparent.

[10] Section 1869(a) provides:

"Entitlement to and amount of benefits

"The determination of whether an individual is entitled to benefits under part A or part B, and the determination of the amount of benefits under part A, shall be made by the Secretary in accordance with regulations prescribed by him." 42 U. S. C. § 1395ff(a).

retary could have acted,[11] it is perfectly clear that the Secretary has made no determination pertaining to Ringer that is covered by § 1869(a).[12]   Section 1869(b)(1)(C) states that an individual "dissatisfied with any determination made under subsection (a)" is entitled to the kind of hearing authorized by § 205(b) of Title II of the Social Security Act, and to judicial review as prescribed in § 205(g) of that Title.[13]   Since there has been no "determination" in this case, this provision does not apply to Ringer either.[14]

We come then to § 1872, which in relevant part provides that § 205(h) shall "apply with respect to this subchapter to the same extent as [it is] applicable with respect to subchapter II of this chapter."[15]   Nowhere in this reticulated

[11] See *ante*, at 622; Brief for Petitioner 37.

[12] In fact, Ringer wrote the Secretary a letter seeking such a determination but was told that no determination could be made unless he had the surgery and then sought reimbursement.   Respondent Vescio also could not afford the operation.   Eventually her condition deteriorated to the point where her physician agreed to operate without any assurance of payment.   Ms. Vescio died a little more than a year after the operation. Brief for Respondents 9, and n. 10.

[13] "(1) Any individual dissatisfied with any determination under subsection (a) of this section as to—

.        .        .        .

"(C) the amount of benefits under part A (including a determination where such amount is determined to be zero)

"shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title."   42 U. S. C. § 1395ff(b)(1)(C).

[14] This is made even clearer by the fact that § 1869(b)(1)(C) also provides for the applicant's right to an administrative hearing as provided by § 205(b) and "to judicial review of the Secretary's final decision after such hearing as is provided in § [2]05(g)."   Because Ringer's action is not such a challenge, the provisions of § 1869 have no application here.

[15] Section 1872 reads as follows:

"The provisions of sections 406 and 416(j) of this title, and of subsections (a), (d), (e), (f), (h), (i), (j), (k), and (l) of section 405 of this title, shall also apply with respect to this subchapter to the same extent as they are applicable with respect to subchapter II of this chapter."   42 U. S. C. § 1395ii.

statutory scheme is there any requirement that every "question" arising under the Medicare Act must be litigated in an action brought under § 205(g). Quite the contrary § 1872 applies § 205(h) to "this subchapter," *i. e.*, to the provisions concerning reimbursement determinations contained in § 1869. Yet not one of the provisions in that section is relevant to Ringer. Ringer's claim is not the type of claim covered by "this subchapter," since the subchapter applies only to the type of hearing provided for in § 205(b). What Ringer seeks is not the type of hearing provided for in § 205(b), which would arise under "this subchapter," but instead an action under the right-of-review provisions of the Administrative Procedure Act (APA), 5 U. S. C. §§ 701–706.[16] Hence 28 U. S. C. § 1331 provides jurisdiction to entertain such a claim. See *Califano* v. *Sanders*, 430 U. S. 99 (1977).

This analysis is confirmed by *Weinberger* v. *Salfi*, 422 U. S. 749 (1975). In that case, on which the majority relies so heavily, the Court held that when a claimant seeks payment of benefits under the Social Security Act, his claim "arises under" that Act within the meaning of § 205(h) and hence may not be brought pursuant to 28 U. S. C. § 1331.[17] The obvious difference between this case and *Salfi* is that Salfi had a claim which could be raised under §§ 205(b) and (g); indeed the Court upheld the exercise of jurisdiction over that case under § 205(g). See 422 U. S., at 763–767. Salfi

---

[16] In particular, the APA provides:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. . . ." 5 U. S. C. § 702.

"Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. . . ." § 704.

[17] It should be noted that the portion of *Salfi* on which the majority relies is dicta. Since the Court held that it had jurisdiction over that case under § 205(g), its discussion of the preclusive effect of § 205(h) was unnecessary to the decision in that case. See 422 U. S., at 787–788 (BRENNAN, J., dissenting).

therefore had a "claim" under the Social Security Act, and fell within the literal language of § 205(h) because he had filed an application for payment of benefits; review of the decision on such an application falls within the preclusive provisions of § 205(h):

> "The entitlement sections of the Act specify the filing of an application as a prerequisite to entitlement, so a court could not in any event award benefits absent an application. . . . Once the application is filed, it is either approved, in which event any suit for benefits would be mooted, or it is denied. Even if the denial is nonfinal, it is still a 'decision of the Secretary' which, by virtue of the second sentence of § [2]05(h), may not be reviewed save pursuant to § [2]05(g)." 422 U. S., at 759, n. 6.

Thus, what *Salfi* holds is that § 205(h) "precludes federal-question jurisdiction in an action challenging denial of claimed benefits." *Mathews* v. *Eldridge*, 424 U. S. 319, 327 (1976).

In contrast to Salfi, Ringer has no "claim" within the meaning of the Social Security Act—because he is unable to have the operation, he cannot file an application for reimbursement and no "decision of the Secretary" has been made denying such a claim[18] which could fall under § 205(h). Hence he

---

[18] The Solicitor General makes this point very clearly:

"As typically is the case in insurance programs generally, a claim may be filed under Medicare (thereby invoking the administrative process that must precede the right to judicial review under 42 U. S. C. 405(g)) only *after* the individual has been furnished the services for which payment is sought. See 42 U. S. C. (& Supp. V) 1395c, 1395d(a), 1395f(a), 1395ff(b) and 405(b); 42 CFR 405.1662–405.1667. Congress obviously appreciated that the task of administering the Medicare Program would be burdensome enough with the processing of concrete claims for services already rendered, without also providing for a scheme by which an individual could obtain a declaratory ruling on whether certain services would be covered should the individual elect to obtain them in the future." Brief for Petitioner 37, n. 26 (emphasis in original).

does not fall within the preclusive language of § 205(h), which requires the existence of a "claim arising under the Social Security Act." Section 205(h) cannot operate in this context as it was intended—"to route review through § 205(g)." *Sanders*, 430 U. S., at 103, n. 3. It thus simply has no application. Because Ringer cannot afford the operation and obtain judicial review under the relevant provisions of the Medicare Act, he has no "claim" that "arises under" that Act and is unable to generate one.[19]

There is yet another fundamental reason why § 205(h) does not preclude Ringer's claim. Section 205(h) precludes only actions "to recover" on a claim arising under the Social Security Act. That language plainly refers to an action in which the claimant seeks payment of benefits. Indeed, as I ob-

---

[19] There is a wealth of authority in the lower courts for the proposition that when the Social Security Act provides no avenue for review, there is no claim arising under that Act within the meaning of § 205(h) and hence no bar to jurisdiction under 28 U. S. C. § 1331. See *National Assn. of Home Health Agencies* v. *Schweiker*, 223 U. S. App. D. C. 209, 217–218, 690 F. 2d 932, 940–942 (1982), cert. denied, 459 U. S. 1205 (1983); *Chelsea Community Hospital, SNF* v. *Michigan Blue Cross Assn.*, 630 F. 2d 1131, 1133–1136 (CA6 1980); *Humana of South Carolina, Inc.* v. *Califano*, 191 U. S. App. D. C. 368, 374–375, 590 F. 2d 1070, 1076–1077 (1978); *Overlook Nursing Home, Inc.* v. *United States*, 214 Ct. Cl. 60, 64–65, 556 F. 2d 500, 502 (1977); *Hazelwood Chronic & Convalescent Hospital, Inc.* v. *Weinberger*, 543 F. 2d 703, 706–707 (CA9 1976); *Whitecliff, Inc.* v. *United States*, 210 Ct. Cl. 53, 56–59, 536 F. 2d 347, 350–351 (1976), cert. denied, 430 U. S. 969 (1977); *Rothman* v. *Hospital Service of Southern California*, 510 F. 2d 956, 958–959 (CA9 1975); *Kingsbrook Jewish Medical Center* v. *Richardson*, 486 F. 2d 663, 666–668 (CA2 1973); *Mid Atlantic Nephrology Center, Ltd.* v. *Califano*, 433 F. Supp. 23, 31–32 (Md. 1977); *Hillside Community Hospital of Ukiah* v. *Mathews*, 423 F. Supp. 1168, 1172–1173 (ND Cal. 1976); *Americana Nursing Centers, Inc.* v. *Weinberger*, 387 F. Supp. 1116, 1118 (SD Ill. 1975); *Mount Sinai Hospital of Greater Miami, Inc.* v. *Weinberger*, 376 F. Supp. 1099, 1005–1108 (SD Fla. 1974), rev'd on other grounds, 517 F. 2d 329 (CA5 1975), modified, 522 F. 2d 179, cert. denied, 425 U. S. 935 (1976); *Gainville* v. *Richardson*, 319 F. Supp. 16, 18 (Mass. 1970) (three-judge court).

served above, *Salfi* stressed that the claimant in that case sought the payment of benefits.[20] Today's majority finds § 205(h) applicable because Ringer "is clearly seeking to establish a right to future payments should he ultimately decide to proceed with BCBR surgery." *Ante*, at 621. If Ringer were seeking payment of benefits, this might well be a different case, but that is plainly not what he seeks. Ringer seeks a declaration that the Secretary's BCBR rule is invalid and an injunction against its operation. He alleges that it is the "irrefutable presumption" contained in the rule—which denies administrative law judges discretion to decide in a hearing under § 205(b) whether BCBR is reimbursable—that prevents him from having the operation.[21] Ringer disavows any desire to obtain a judicial determination that benefits must be paid to him. Brief for Respondents 6–7. Thus, Ringer is not seeking "to recover." Instead he seeks an injunction against this "irrefutable presumption." Such an injunction would not result in the payment of benefits, but merely remove the hurdle to his having the operation, since under those circumstances his physician would have some hope of obtaining reimbursement through the administrative process.[22]

"Unlike the plaintiff in *[Salfi]*, whose action was the run-of-mine type clearly fitting the language 'to recover

---

[20] See *supra*, at 633–635. See also 422 U. S., at 760–761.

[21] App. 10–11. See also Brief for Respondents 9, 26–29.

[22] In this connection, it must be remembered that surgeons have had remarkable success in winning cases before Administrative Law Judges concerning BCBR surgery. The parties stipulated that as of the date the BCBR regulation was issued, at least 199 appeals of denials of Medicare reimbursement for BCBR surgery had been heard by Administrative Law Judges. Of these, reimbursement was ordered in at least 170 cases, and at least 12 cases were dismissed as premature. Decisions ordering reimbursement had been rendered by at least 10 different Administrative Law Judges and the three judges of the Secretary's Appeals Council. App. 32. It was this success which led to the promulgation of the challenged rule.

on any claim arising under' Title II, the plaintiff in this case . . . raises only a procedural challenge, the adjudication of which will not affect the substantive question of continued entitlement to [Medicare] benefits." *Ellis* v. *Blum*, 643 F. 2d 68, 82 (CA2 1981) (Friendly, J.).[23]

Ringer is not seeking to "bypass the exhaustion requirements of the Medicare Act," *ante*, at 621, but rather to be *able* to exhaust—something he can only do if the rule is enjoined so that he and his surgeon can seek reimbursement through the administrative process.[24] Ringer's challenge to the operation of a rule that prevents him from having a "claim" he can pursue under § 205 is therefore not a claim covered by § 205(h)—it is a challenge to a procedural rule that could prove meritorious even if Ringer is ultimately not entitled to reimbursement. Hence it can be asserted under § 1331.

## II

Unfortunately the majority's errors in this case are not limited to its construction of § 205(h). For even if we assume that § 205(h) is applicable to Ringer's case, and that he can obtain judicial review only through § 205(g), the majority's disposition would still be incorrect.

---

[23] See *National Assn. of Home Health Agencies* v. *Schweiker*, 223 U. S. App. D. C., at 213–214, 690 F. 2d, at 936–937; *Humana of South Carolina, Inc.* v. *Califano*, 191 U. S. App. D. C., at 378–379, 590 F. 2d, at 1080–1081; *Mid Atlantic Nephrology Center, Ltd.* v. *Califano*, 433 F. Supp., at 31–32; *Gainville* v. *Richardson*, 319 F. Supp., at 18 (three-judge court). See also *Griffin* v. *Richardson*, 346 F. Supp. 1226, 1230 (Md.) (three-judge court), summarily aff'd, 409 U. S. 1069 (1972).

[24] As a result, the majority's statement that "Ringer has not given the Secretary an opportunity to rule on a concrete claim for reimbursement," *ante*, at 622, has a somewhat callous tone. Ringer would like nothing more than to give the Secretary that opportunity. It is the challenged rule which prevents Ringer from having the operation and giving the Secretary "an opportunity" to rule on his claim for reimbursement.

Section 205(g) contains three jurisdictional prerequisites to judicial review: a "[1] final [2] decision of the Secretary [3] made after a hearing . . . ."[25]   In *Salfi*, the Court decided that the first and third elements are "waivable" upon an appropriate showing, whereas the second element is nonwaivable and must be satisfied in all cases before judicial review may be obtained.   See 422 U. S., at 764–767.

Ringer has plainly satisfied the nonwaivable element. While "some decision by the Secretary is clearly required by the statute," *Mathews* v. *Eldridge,* 424 U. S., at 328,[26] the Secretary has made a decision here.   By issuing the challenged BCBR regulation, she decided that BCBR can in no event be reimbursable.   If that is not a "decision of the Secretary," I do not know what is.   The fact that Ringer himself has not raised his legal arguments concerning the BCBR regulation in the administrative process is irrelevant, as *Eldridge* makes clear.   There, the claimant did not raise his constitutional challenge to procedures the Secretary had adopted by regulation in the administrative process, yet the Court held that the nonwaivable element had been satisfied since the Secretary had already made clear what his "decision" was with respect to Eldridge's challenge through the issuance of the disputed regulations: "It is unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context."   *Id.,* at 330.   It is similarly unrealistic to think that the Secretary would reconsider her BCBR regulation in the context of a single adjudicatory pro-

---

[25] See n. 4, *supra.*   Section 205(g) also contains a statute of limitations and a venue requirement.   "As such, they are waivable by the parties, and not having been timely raised below, see Fed. Rules Civ. Proc. 8(c), 12(h)(1), need not be considered here."   422 U. S., at 764.

[26] See also *Heckler* v. *Lopez,* 464 U. S. 879, 883 (1983) (STEVENS, J., dissenting in part) (on motion to vacate stay); *Schweiker* v. *Wilson,* 450 U. S. 221, 228, n. 8 (1981); *Califano* v. *Sanders,* 430 U. S. 99, 108 (1977).

ceeding. The regulation was issued to *prevent* claimants from litigating the reimbursability of BCBR in an adjudicatory context. Thus, the relevant decision of the Secretary here could not be any decision made in the administrative process; rather it is the decision to issue the BCBR regulation. That "decision of the Secretary" satisfies the nonwaivable portion of § 205(g).[27]

The waivable elements are satisfied as well. In *Salfi*, the Court held that waiver was appropriate when there is no chance that the claimant could prevail in the administrative process. In such circumstances, "further exhaustion would not merely be futile for the applicant, but would also be a commitment of administrative resources unsupported by any administrative or judicial interest." 422 U. S., at 765–766.[28] Here, just as in *Salfi*, "a hearing [would] be futile and wasteful." *Id.*, at 767.[29] The Secretary has stipulated that if

---

[27] Thus, the majority's characterization of the nonwaivable requirement as "presenting a claim for reimbursement" to the Secretary, *ante*, at 617, is not quite correct. What the plain language of the statute requires is not "presentment" of a "claim for reimbursment"—those words appear nowhere in § 205(g). Rather, what the statute requires is a "decision of the Secretary." As for the language in *Eldridge* on which the majority relies, it is most sensibly read not as indicating that the statute says something that it manifestly does not, but rather that the usual (but not necessarily the only) means for obtaining a "decision of the Secretary" is the filing of an application for benefits.

[28] While *Salfi* contains language suggesting that only the Secretary can decide whether the finality and hearing elements of § 205(g) should be waived, subsequent cases have made clear that when no purpose would be served by requiring further exhaustion, deference to the Secretary's judgment as to waiver would be inappropriate and the waivable elements may be satisfied over the Secretary's objection because of futility. See *Mathews* v. *Diaz*, 426 U. S. 67, 76–77 (1976); *Eldridge*, 424 U. S., at 330. See also *ante*, at 617–619; *Heckler* v. *Lopez*, 464 U. S., at 883 (STEVENS, J., dissenting in part) (on motion to vacate stay).

[29] See also *Califano* v. *Goldfarb*, 430 U. S. 199, 203, n. 3 (1977); *Mathews* v. *Diaz*, 426 U. S., at 76–77; *Weinberger* v. *Wiesenfeld*, 420 U. S. 636, 641, n. 8 (1975).

Ringer had the operation and filed a claim for reimbursement, it would be denied under the BCBR regulation. App. 32. Since the Secretary "stipulated in the District Court that [Ringer]'s application would be denied . . . we treat the stipulation in the District Court as tantamount to a decision denying the application and as a waiver of the exhaustion requirements." *Mathews* v. *Diaz*, 426 U. S. 67, 76–77 (1976). Requiring the administrative process to be invoked so it can be determined whether applications such as Ringer's could also be denied on some other ground would simply be "a commitment of administrative resources unsupported by any administrative or judicial interest," especially since Ringer is not seeking the payment of benefits at this juncture. When a case is ripe for summary judgment because of a dispositive legal question, we do not require district courts to hold a trial anyway to determine if the complaint might be meritless on some other ground. It makes no more sense to impose such a requirement in the context of § 205(g).[30] Indeed, in light of the dispositive rule, there is no reason to believe that the Secretary would waste her resources by holding a hearing to see if Ringer's claim could be denied on some other ground, and the Secretary has not represented that such a hearing in fact would be held.

Moreover, even if a claim such as Ringer's should ordinarily be exhausted, the waivable element is satisfied when there is a "colorable claim" that the claimant will be injured if forced to exhaust in a way that cannot be remedied by later payment of benefits. *Ante*, at 617–618. Ringer clearly has such a claim. He suffers from serious pulmonary distress, and represents that if he does not get BCBR he faces a risk

---

[30] See, *e. g.*, *Kuehner* v. *Schweiker*, 717 F. 2d 813, 817–818 (CA3 1983); *Jones* v. *Califano*, 576 F. 2d 12, 18–19 (CA2 1978); *Liberty Alliance of the Blind* v. *Califano*, 568 F. 2d 333, 346 (CA3 1977); *De Lao* v. *Califano*, 560 F. 2d 1384, 1388 (CA9 1977); *Fitzgerald* v. *Schweiker*, 538 F. Supp. 992, 997–999 (Md. 1982); *Kennedy* v. *Harris*, 87 F. R. D. 372 (SD Cal. 1980).

of continued deterioration in his health, and even death.[31] Surely, the injury Ringer faces while awaiting judicial review—which on the majority's view he in any event can never obtain because of his inability to afford the operation—constitutes a collateral injury not remedied even if Ringer somehow could exhaust his administrative "remedy."

> "To allow a serious illness to go untreated until it requires emergency hospitalization is to subject the sufferer to the danger of a substantial and irrevocable deterioration in his health. Cancer, heart disease, or respiratory illness, if untreated for a year, may become all but irreversible paths to pain, disability, and even loss of life. The denial of medical care is all the more cruel in this context, falling as it does on indigents who are often without the means to obtain alternative treatment." *Memorial Hospital* v. *Maricopa County*, 415 U. S. 250, 261 (1974) (footnote omitted).

Thus, Ringer "has raised at least a colorable claim that because of his physical condition and dependency on [Medicare] benefits, an erroneous termination would damage him in a way not recompensable through retroactive payments." *Eldridge*, 424 U. S., at 331 (footnote omitted). Ringer should be permitted to challenge the BCBR rule which causes this injury without satisfying the waivable requirements of § 205(g).[32]

---

[31] One of the original plaintiffs in the District Court, Ernie M. Haley, was, like Ringer, unable to afford the operation and died while awaiting BCBR. Brief for Respondents 9. Thus, the risk Ringer faces because of his inability to obtain judicial review at this juncture is far from speculative.

[32] Cf. *Eldridge*, 424 U. S., at 331, n. 11 ("the core principle that statutorily created finality requirements should, if possible, be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered remains applicable [to § 205(g)]").

Thus, jurisdiction over this case is appropriate under § 205(g). The Secretary has surely made a "decision" on BCBR within the meaning of that statute, and to require further pursuit of adjudicatory remedies when the purpose of the challenged rule is to preclude adjudication is a potentially tragic exercise in futility.

### III

The Court's inability to find a jurisdictional basis for Ringer's challenge to the Secretary's formal ruling stems in part from a concern that the Secretary and the federal courts would otherwise be flooded by requests for advisory opinions by individuals contemplating various forms of medical treatment. There is no need to evaluate this purely hypothetical concern because this case presents no question concerning Ringer's "right" to an advisory opinion or the Secretary's "duty" to provide one. We may assume that the Secretary is under no duty to volunteer an opinion on the reimbursability of a given procedure and yet sustain Ringer's claim. The reason is simple—the Secretary has already issued an advisory opinion on BCBR. That is exactly what her BCBR regulation is. The regulation was specifically designed to prevent this issue from arising in a concrete adjudicatory context. Indeed, her ruling is far more significant than mere advice; it is a formal pronouncement directing the bureaucracy under her command to reject all claims for reimbursement for BCBR surgery, despite the uniform course of decision by a variety of Administrative Law Judges, as well as the Secretary's Appeals Council, that such claims qualify for reimbursement. Thus, this is not a case concerning a "right" to an advisory opinion. Rather, this case poses the question whether, once the Secretary issues a rule which has the effect of denying a Medicare beneficiary surgery, that beneficiary may obtain judicial review as to the validity of the rule.[33] I see no reason why that question should be an-

---

[33] The majority argues that the logic of my position applies to any person who wishes to obtain an advisory opinion from the Secretary. *Ante,* at

swered negatively. Medicare beneficiaries can obtain judicial review of all of the Secretary's adjudicatory decisions that deny them benefits; I am certain that Congress did not intend to preclude judicial review of the Secretary's legislative decisions which have the same effect.[34]

## IV

The majority has decided that it is proper to prevent a citizen from *ever* challenging a rule which denies him surgery he desperately needs. Ringer cannot afford the operation and therefore his "claim" can never be "pursued" in a reimbursement proceeding. In making this decision, the Court ignores a basic proposition of administrative law. What Justice Harlan wrote for the Court in *Abbott Laboratories* v. *Gardner*, 387 U. S. 136 (1967), illustrates the point:

624–626. It does not. If a surgeon thinks that a given procedure is medically necessary and reasonable, he should be confident of his ability to convince an administrative law judge of exactly that, and therefore will provide the operation with the expectation of receiving reimbursement after the fact through the administrative process. Indeed that is the way that *most* surgery is in fact provided under Medicare; the surgeon does not require prepayment precisely because he is confident he will be reimbursed. That is certainly true here—Ringer's surgeon would provide the surgery if he were given an opportunity to obtain a hearing after the fact. My position only applies to persons who are *unable* to obtain a hearing because the Secretary has pre-empted the administrative process. That is the effect of her BCBR rule, and why it is meaningless to speak of Ringer "pursuing" his administrative remedies.

[34] The majority's fear of a flood of Medicare actions seeking advisory opinions is put into perspective by the fact that not a single lawsuit was filed seeking an advisory determination as to the reimbursability of BCBR until the Secretary issued the challenged regulation. The reason is simple enough—at that point persons like Ringer had access to an administrative remedy. Jurisdiction over Ringer's claim would not increase the volume of Social Security Act litigation; rather, it would simply enable persons aggrieved by the Secretary's legislative rulings to obtain the judicial review that they otherwise would have been able to obtain following an adjudicative proceeding. Moreover, it appears that actions like Ringer's would be relative rarities. The Secretary's decision to pre-empt the administrative process with respect to BCBR appears to be highly unusual.

"The first question we consider is whether Congress by the Federal Food, Drug, and Cosmetic Act intended to forbid pre-enforcement review of this sort of regulation promulgated by the Commissioner. The question is phrased in terms of 'prohibition' rather than 'authorization' because a survey of our cases shows that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress. Early cases in which this type of judicial review was entertained, have been reinforced by the enactment of the Administrative Procedure Act, which embodies the basic presumption of judicial review to one 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute,' 5 U. S. C. § 702, so long as no statute precludes such relief or the action is not one committed by law to agency discretion, 5 U. S. C. § 701(a). The Administrative Procedure Act provides specifically not only for review of '[a]gency action made reviewable by statute' but also for review of 'final agency action for which there is no other adequate remedy in a court,' 5 U. S. C. § 704. The legislative material elucidating that seminal act manifests a congressional intention that it cover a broad spectrum of administrative actions, and this Court has echoed that theme by noting that the Administrative Procedure Act's 'generous review provisions' must be given a 'hospitable' interpretation. Again in *Rusk* v. *Cort*, [369 U. S. 367, 379–380 (1967)], the Court held that only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Id.*, at 139–141 (citations omitted).

As Justice Harlan indicated, *Abbott* is but one in a long line of cases holding that nothing less than clear and convincing

evidence of legislative intent to preclude judicial review is required before a statute will be construed to preclude the citizen's right to seek judicial redress for violations of his rights.[35] *Salfi* itself applied this presumption to the Social Security Act, and construed § 205(h) to preclude judicial review in that case only because review was available under § 205(g). 422 U. S., at 762. In our system of government under law, administrative absolutism is not the rule, but only the narrow exception.

In this case Ringer, whose only sin is that he is unable to afford BCBR surgery, is denied access to any judicial review of what we must take to be a rule that violates the Secretary's statutory duty to assure reimbursement of necessary and reasonable medical expenses under a health insurance program. Because he cannot afford the surgery, he will never be able to seek administrative or judicial review.

> "Here . . . 'absence of jurisdiction of the federal courts' would mean 'a sacrifice or obliteration of a right which Congress has given . . . for there is no other means, within [Ringer's] control, to protect and enforce that right. And 'the inference [is] strong that Congress intended the statutory provisions governing the general jurisdiction of those courts to control.' This Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers." *Leedom* v. *Kyne,*

---

[35] See, *e. g., Southern R. Co.* v. *Seaboard Allied Milling Corp.,* 442 U. S. 444, 454, 462 (1979); *Morris* v. *Gressette,* 432 U. S. 491, 500–501 (1977); *Dunlop* v. *Bachowski,* 421 U. S. 560, 567–568 (1975); *Johnson* v. *Robison,* 415 U. S. 361, 373–374 (1974); *Citizens To Preserve Overton Park, Inc.* v. *Volpe,* 401 U. S. 402, 410 (1971); *Tooahnippah* v. *Hickel,* 397 U. S. 598, 605–606 (1970); *Barlow* v. *Collins,* 397 U. S. 159, 166–167 (1970); *Association of Data Processing Service Organizations, Inc.* v. *Camp,* 397 U. S. 150, 156–157 (1970); *Brownell* v. *Tom We Shung,* 352 U. S. 180, 185 (1956); *Heikkila* v. *Barber,* 345 U. S. 229, 232 (1953).

358 U. S. 184, 190 (1958) (citations omitted) (quoting *Switchmen* v. *National Mediation Board*, 320 U. S. 297, 300 (1943)).

When the issue is properly phrased in terms of whether there is clear and convincing evidence that Congress intended to preclude judicial review of such a case, it is essential to remember that the entire statutory scheme was enacted for the benefit of the aged, the infirm, and the impoverished. It was the medically needy that Congress sought to aid through the provision of health insurance under the Medicare program. Yet those most in need of comprehensive medical insurance are those with the least ability to assert their statutory right to such insurance under the majority's approach. In telling Ringer that "he must pursue his claim" under § 205(g), the Court indicates that he will have the "right" to judicial review only if he can pay for it—and he cannot.

> "To sanction such a ruthless consequence . . . would justify a latter-day Anatole France to add one more item to his ironic comments on the 'majestic equality' of the law. 'The law, in its majestic equality, forbids the rich as well as the poor to sleep under bridges, to beg in the streets, and to steal bread.'" *Griffin* v. *Illinois*, 351 U. S. 12, 23 (1956) (Frankfurter, J., concurring in judgment).

On the majority's view it would appear the rich and the poor alike also have the right to front the money for major surgery. I cannot believe that is what Congress intended, or what our precedents require.

Of course, the integrity of the administrative exhaustion mechanism created by Congress is vital, and the Act should not be construed in a way that would undermine that system. But all Ringer seeks to do is challenge a rule that prevents him from having the operation and then seeking reimbursement through the statutory review system. It is not Ringer who is bypassing the administrative review system, but the

Secretary, whose BCBR rule prevents persons such as Ringer from seeking administrative review of a concrete claim for benefits. I can find no evidence, much less clear and convincing evidence, that Congress intended to prohibit judicial review in these circumstances.

Ringer does not seek payment of benefits under the Medicare Act, but rather to challenge a rule that prevents him from ever filing a claim for reimbursement under that Act. Therefore I would hold that Ringer is not seeking "to recover on a claim" under the Social Security Act, and hence federal jurisdiction over his claim is not barred by § 205(h) of that Act. Moreover, even if § 205(h) applied here, I would not require Ringer to pursue administrative review which is manifestly futile. Accordingly, while I concur in the Court's disposition of the claims asserted by the respondents who have had BCBR surgery, I respectfully dissent from its disposition of respondent Ringer's claim.