United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 30, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No.04-50087
_____

RENCARE, LTD

                Plaintiff - Appellant

v.

HUMANA HEALTH PLAN OF TEXAS, INC, doing business as Humana Health Plan of San
Antonio; HUMANA HMO OF TEXAS, INC

                Defendants - Appellees

_____

Appeal from the United States District Court
for the Western District of Texas

_____

Before BENAVIDES, DENNIS, and CLEMENT, Circuit Judges.

BENAVIDES, Circuit Judge:

RenCare appeals the district court's dismissal of RenCare's claims for failure to exhaust

administrative remedies and the district court's partial denial of RenCare's motion to remand its

claims to state court. Because RenCare's claims against Humana are not inextricably intertwined

with a claim for Medicare benefits and because there are, in fact, no administrative appeal

procedures for RenCare to pursue, we reverse both the district court's dismissal of RenCare's

claims and the district court's partial denial of RenCare's motion to remand its claims to state

court.

## I. BACKGROUND

The Medicare program, which provides medical insurance for the aged and disabled, is

1

administered by the Center for Medicare and Medicaid Services ("CMS"), a division of the U.S. Department of Health and Human Services ("HHS"). The Medicare Act, 42 U.S.C. §§ 1395-1395ggg (2000), consists of three parts, labeled parts A, B, and C. Part C, added in 1997, contains the Medicare + Choice ("M+C") plan, 42 U.S.C. §§ 1395w–21 to 2395w–28, which provides medical benefits to its enrollees through a range of coverage plans, 42 U.S.C. § 1395w–21(a)(2), and is administered by private, managed health care organizations. 42 U.S.C. § 1395w–27. In addition to the medical services available under Parts A and B, individual plans may offer supplemental benefits and may require the enrollee to pay a premium fee. *See* 42 U.S.C. § 1395w–22(a)(1), (a)(3); 42 U.S.C. § 1395w–24; 42 C.F.R. §§ 422.100(c), 422.101–422.102, 422.502(a)(3)(i); 42 C.F.R. §§ 422.300–422.312. M+C organizations receive fixed monthly payments from CMS. 42 U.S.C. § 1395w–23(a)(1)(A).

Humana is a Texas HMO under contract with CMS to provide medical care to M+C beneficiaries. Under its contract with CMS, Humana receives a fixed amount per month for each enrolled M+C patient regardless of the value of services the patient actually receives. In October, 2000, Humana contracted RenCare to provide kidney dialysis services to Humana's enrollees, including its M+C enrollees. Humana and RenCare later became embroiled in a dispute over reimbursement for end stage renal dialysis services that RenCare provided to Humana enrollees. As a result, RenCare sued Humana in Texas state court for breach of contract, detrimental reliance, fraud, and violations of state law.

Humana moved for removal of the claims to federal district court, arguing that RenCare's claims were preempted by the Medicare Act and thus properly belonged only in federal court. After the district court granted Humana's motion, RenCare requested that the case be remanded

to state court. The district court retained jurisdiction over RenCare's claims as they related to M+C enrollees and remanded to state court RenCare's claims relating to the Humana commercial enrollees. Subsequently, the district court dismissed the claims that remained in federal court, finding that RenCare had failed to exhaust its administrative remedies under the Medicare Act.

RenCare now appeals the district court's partial denial of its motion to remand its claims to state court and the dismissal of its claims for failure to exhaust administrative remedies. RenCare argues that its claims do not arise under federal law and thus are not subject to federal jurisdiction or federal administrative remedies. We agree.

## II. ANALYSIS

42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that §405(g) is the sole avenue for judicial review of all "claims arising under" the Medicare Act. Under § 405(g), a final decision of the Secretary of Health and Human Services ("Secretary") may be reviewed by a federal court. Regulations promulgated by the Secretary, *see* 42 U.S.C. § 1395hh, indicate that a final decision is issued only after a case has progressed through all the levels of administrative review provided for each Part of the Medicare Act. *See* 42 C.F.R §§ 405.701–405.753 (reconsideration and appeals under Part A); 42 C.F.R. §§ 405.801–405.877 (appeals under Part B); 42 C.F.R. §§ 422.560–422.626 (grievances, organization determinations, and appeals under Part C).

A claim arises under the Medicare Act if "both the standing and the substantive basis for the presentation" of the claim is the Medicare Act, *Heckler v. Ringer*, 466 U.S. 602, 606 (1984) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 760-61 (1975)), or if the claim is "inextricably intertwined" with a claim for Medicare benefits, *see id.* at 623; *see also Affiliated Prof'l Home*

3

*Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999) (finding that even though claims were presented as constitutional claims, they were inextricably intertwined with a claim of entitlement to Medicare benefits and thus subject to the exhaustion requirements of the Medicare Act).

We review the district court's determination that RenCare's claims arise under the Medicare Act *de novo.  See First Gibraltar Bank, FSB v. Morales*, 42 F.3d 895, 897 (5th Cir. 1995) ("A district court's conclusions of law are reviewable de novo.").

Because RenCare's claims are based on state law, the standing and substantive basis for its claims is clearly not the Medicare Act.  Thus, RenCare must exhaust its administrative remedies and appeal the resulting administrative decision in federal court only if RenCare's claims are inextricably intertwined with a claim for Medicare benefits.  However, a review of relevant case law and Medicare regulations reveals that RenCare's claims fall outside of the category of cases that arise under the Medicare Act and, furthermore, that the administrative appeals mechanism for Part C of the Medicare Act excludes claims such as RenCare's.

### A.  RenCare's Claims do not Arise Under the Medicare Act

In the seminal case discussing whether a claim "arises under" the Medicare Act, *Heckler v. Ringer*, three individuals who had been denied Medicaid reimbursement for bilateral carotid body resection surgery ("BCBR") sued the Secretary. *Ringer*, 466 U.S. at 610 n.7.  Rather than suing directly for reimbursement for the surgery, the claimants sought only an invalidation of the Secretary's policy against reimbursement for BCBR surgery and a declaration that the expenses of the surgery were reimbursable.  *Id.* at 614.  This, they argued, was wholly collateral to a claim for benefits.  *Id.* at 618.  However, because these claims were not "anything more than, at bottom, a

4

claim that they should be paid," they were "inextricably intertwined" with a claim for benefits and therefore arose under the Medicare Act. *Id.* at 614.

The case at bar presents a vastly different situation. Here, Medicare beneficiaries were not denied services or reimbursement for services. To the contrary, Humana approved of, and RenCare provided, the kidney dialysis services for which RenCare seeks payment. Because RenCare has waived its right to payment from enrollees in its contract with Humana, Humana's M+C enrollees are not at risk of being billed for the services that RenCare provided them. Thus, unlike the situation in *Ringer*, there are no enrollees seeking Medicare benefits. Furthermore, while the government had an interest in the outcome of the *Ringer* litigation, the government has no financial interest in the present case because it pays Humana a flat rate each month for Humana's services to M+C enrollees, regardless of the services it renders to M+C beneficiaries. Irrespective of who ultimately prevails, the government will not receive or pay out funds. The dispute is solely between Humana and RenCare and is based on the parties' privately-agreed-to payment plan.

Humana points to *Midland Psychiatric Associates, Inc. v. United States*, 145 F.3d 1000, (8th Cir. 1998), and *Bodimetric Health Services, Inc. v. Aetna Life & Casualty*, 903 F.2d 480, (7th Cir. 1990) in support of its position. As in the present case, both *Midland* and *Bodimetric* involved health care providers suing insurance companies for reimbursement for services provided to Medicare beneficiaries. However, those cases dealt with payments for services provided under Parts A and B of the Medicare Act, *see Midland*, 145 F.3d at 1001; *Bodimetric*, 903 F.2d at 482, while RenCare seeks payment for services provided under Part C of the Medicare Act. As explained below, this distinction demands a different ruling.

5

One important difference in the administration of Part C, as opposed to Parts A and B, of the Medicare Act is the financial risk borne by the administering entity. Under Parts A and B, funds from the Federal Supplementary Medical Insurance Trust Fund are paid directly to providers for each qualifying service provided to a beneficiary. *See* 42 U.S.C. §§ 1395f(b), 1395g(a), 1395*l*(a). The funds may be paid by intermediaries or carriers contracted by CMS to process claims and disburse federal funds. *See* 42 U.S.C. §§ 1395h(a), 1395u(a). Under Part C, however, CMS pays M+C organizations fixed monthly payments in advance, regardless of the value of the services actually provided to the M+C beneficiaries. *See* 42 U.S.C. §1395w-23(a). In return, the M+C organization assumes responsibility and full financial risk for providing and arranging healthcare services for M+C beneficiaries, 42 U.S.C. § 1395w-25(b); 42 C.F.R § 422.100(a), sometimes contracting health care providers to furnish medical services to those beneficiaries, *see* 42 U.S.C. § 1395w-25(b)(4). Such contracts between M+C organizations and providers are subject to very few restrictions, *see, e.g.,* 42 C.F.R. § 422.520(b) (requiring contracts between M+C organizations and providers to contain a prompt payment provision); generally, the parties may negotiate their own terms. Thus, under Part C, the government transfers the risk of providing care for M+C enrollees to the M+C organization.

Accordingly, Humana bears the ultimate responsibility for providing services to its M+C enrollees. It has chosen to fulfill its obligations by contracting RenCare to provide services to enrollees. With the government's risk extinguished, any dispute over payment to RenCare is solely between RenCare and Humana.

With neither M+C enrollees nor the government having any financial interest in the resolution of this dispute, RenCare's claims are not intertwined, much less "inextricably

intertwined," with a claim for Medicare benefits. At bottom, RenCare's claims are claims for payment pursuant to a contract between private parties.

B. *RenCare's Claims are Excluded from the M+C Administrative Appeals Process*

Not only is this case significantly different from other cases in which courts have held that claims arose under the Medicare Act, but it appears that the administrative review process attendant to Part C does not extend to claims in which an enrollee has absolutely no interest.

Part C and CMS's implementing regulations establish mandatory administrative "appeals procedures" for resolving disputes over "organization determinations." *See* 42 U.S.C. § 1395w–22(g); 42 C.F.R. §§ 422.560–422.622. Disputes over any other matter are not subject to the same appeals process to which organization determinations are subject, but, instead, have their own "grievance procedures." 42 C.F.R. §§ 422.562(a)(1)(i), 422.564. An organization determination is a decision by an M+C organization "regarding the benefit an enrollee is entitled to receive under an M+C plan. . . and the amount, if any, that the enrollee is required to pay for a health service." 42 C.F.R. § 422.566. More specifically, an organization determination may be the M+C organization's "refusal to provide or pay for services, in whole or in part, . . .that the enrollee believes should be furnished or arranged for by the M+C organization." 42 C.F.R. § 422.566(b)(3). Enrollees have a right to a timely organization determination, 42 C.F.R. § 422.562(b)(2), and a right to appeal that decision through several levels of review. 42 C.F.R. § 422.562(b)(4)(i)-(vi). However, if an "enrollee has no further liability to pay for services that were furnished by an M+C organization, a determination regarding these services is not subject to appeal." 42 C.F.R. § 422.562(c)(2).

As is evident from the regulations, the administrative review process focuses on enrollees,

7

not health care providers, and is designed to protect enrollees' rights to Medicare benefits. Here, Humana's failure to pay RenCare is not an organization determination subject to the mandatory exhaustion of administrative remedies. No enrollee has requested an organization determination or appeal. No enrollee has been denied covered service or been required to pay for a service. Rather, the M+C enrollees in this case bear no financial risk inasmuch as they have already received the services for which RenCare seeks reimbursement. In fact, there is a complete absence of M+C beneficiary interest in this dispute. The only interest at issue is RenCare's interest in receiving payment under its contract with Humana.

Humana argues that RenCare is acting as an assignee of Humana's M+C beneficiaries and thus may be a party to an organization determination under 42 C.F.R. § 422.574(b), which allows providers to be parties to an organization determination as assignees of beneficiaries. However, the M+C beneficiaries in this case do not have a claim to assign to RenCare. As discussed above, no M+C enrollee has been denied benefits or payment required under the Medicare Act. RenCare is pursuing its own claims against Humana. Thus, Humana's failure to pay RenCare is not an organization determination that RenCare could appeal within the mandatory administrative review mechanism.

## III. CONCLUSION

Because there are no administrative remedies for RenCare to exhaust and because RenCare's claims do not arise under the Medicare Act, we REVERSE the district court's dismissal of RenCare's claims and its partial denial of RenCare's motion to remand its claims to state court.