WOODALL, Justice.
Main & Associates, Inc., d/b/a Southern Springs Healthcare Facility (“Southern Springs”), filed an action in the Bullock Circuit Court, on behalf of itself and a putative class of Alabama nursing homes, against Blue Cross and Blue Shield of Alabama (“BCBS”), asserting claims of breach of contract, intentional interference with business relations, negligence and/or wantonness, and unjust enrichment and seeking injunctive relief. BCBS removed the case to the United States District Court for the Middle District of Alabama, Northern Division (“the federal court”), pursuant to 28 U.S.C. §§ 1331 and 1441(b), arguing, among other things, that South *160 ern Springs’ claims arose under the Medicare Act and that the Medicare Act, as amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (“the MMA”), Pub.L. No. 108-173 (Dec. 8, 2003), 117 Stat. 2066, completely preempts Southern Springs’ state-law claims. Southern Springs moved the federal court to remand the case to the circuit court, arguing that the federal court did not have jurisdiction over its claims. The federal court granted the motion and remanded the case to the Bullock Circuit Court.
After remand, BCBS moved the circuit court for a judgment on the pleadings, arguing that Southern Springs had not exhausted its administrative remedies and that, therefore, the circuit court did not have subject-matter jurisdiction over the case. Specifically, BCBS argued that Southern Springs had “fail[ed] to state a claim upon which relief [could] be granted because all of [its] claims, which are ostensibly based on state law, are expressly preempted by the Medicare Act.” BCBS also argued that Southern Springs could challenge BCBS’s “alleged conduct only under the Medicare Act and federal standards promulgated thereunder[,] standards [that] are subject to a detailed administrative review process and, if applicable, to subsequent judicial review in federal court.” (Emphasis in original.) The circuit court denied BCBS’s motion, and BCBS timely petitioned this Court for a writ of mandamus directing the circuit court to dismiss Southern Springs’ claims. We conclude that Southern Springs’ claims are inextricably intertwined with claims for coverage and benefits under the Medicare Act, 42 U.S.C. § 1395 et seq., and that, therefore, pursuant to Heckler v. Ringer, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), the claims arise under the Medicare Act and are subject to the mandatory administrative procedures and limited judicial review set forth in 42 U.S.C. § 405. Southern Springs has not exhausted its administrative remedies, and the circuit court does not have jurisdiction over its claims. Therefore, we grant BCBS’s petition and issue a writ of mandamus directing the circuit court to dismiss the claims against BCBS.

Facts and Procedural History

The following facts are from the opinion of the federal court remanding the case to the Bullock Circuit Court:
“Medicare is a social security program that provides federally subsidized health insurance for the aged and disabled. The Department of Heálth and Human Services, acting through[] the Centers for Medicare and Medicaid Services[,] administers the Medicare program. Benefits available through Medicare are prescribed by law and divided into four ‘parts.’ Part A provides hospital care, skilled nursing care, home health care, and hospice care benefits. Part B provides coverage for services of physicians and out-patient services. Part D provides benefits for prescription drugs. Part C gives Medicare beneficiaries the option to contract with private health insurance plans to obtain the benefits normally available under Parts A and B, as well as other coverage. Such privately administered plans are known as Medicare Advantage Plans.
“BCBS is a private health insurance company. In addition to its regular health insurance plans and products, BCBS offers a Medicare Advantage Plan specifically tailored for Medicare beneficiaries seeking insurance under Part C. At issue in this lawsuit is a BCBS Medicare Advantage Plan known as Blue Advantage. When Medicare recipients enroll in Blue Advantage, Medi *161 care no longer pays providers of covered services directly when the recipients receive covered medical treatment. Medicare pays BCBS a set monthly fee called a capitation rate to administer and manage the enrollee’s healthcare insurance. In order to obtain medical treatment, the enrollee must visit and use health care providers who are willing to accept the Blue Advantage’s terms of payment or health care providers who have contracted with the insurer to accept Blue Advantage’s terms or who are a part of the Blue Advantage’s network of healthcare providers.
“Southern Springs ... offers skilled nursing services at a nursing home healthcare facility that treats and cares for patients. In August of 2008, Southern Springs and BCBS entered into a contract. Under the terms of the contract, Southern Springs was to provide healthcare services to Blue Advantage enrollees seeking treatment at its facilities and BCBS would compensate Southern Springs for providing these services. Because the enrollees in the Blue Advantage plan are Medicare beneficiaries, the contract between Southern Springs and BCBS provided that BCBS was to provide the same basic benefits and coverage to an enrollee in the Blue Advantage plan as would be provided to that patient if he was enroll[ed] in Part A or B of Medicare. Southern Springs alleges that this means that if Medicare would cover it, then BCBS must also cover it for patients enrolled in Blue Advantage. Southern Springs further alleges that Medicare has developed guidelines and payment schedules for skilled nursing facilities known as Resource Utilization Group Guidelines (‘RUG Guidelines’). The RUG Guidelines dictate if there is coverage and the length of coverage available.
“Southern Springs alleges that BCBS has wrongfully and tortiously failed to provide coverage and benefits for Medicare-covered services it has performed for Blue Advantage enrolled patients despite having a legal and contractual duty to do so. Specifically, Southern Springs alleges that BCBS refuses to follow the RUG Guidelines and instead uses a different system to determine whether claims are covered. BCBS allegedly does this to reduce costs and boost profits. According to Southern Springs, this means that BCBS has not been providing the same coverage to Blue Advantage enrollees as they would have received under Medicare Part A. Because BCBS allegedly breached its legal and contractual duties to Southern Springs, it has suffered lost income and revenue.”
Main & Assocs., Inc. v. Blue Cross & Blue Shield of Alabama, 776 F.Supp.2d 1270, 1273-74 (M.D.Ala.2011) (footnote omitted).

Analysis

“‘Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus.”
Ex parte Liberty Nat’l Life Ins. Co., 888 So.2d 478, 480 (Ala.2003).
BCBS argues that Southern Springs’ claims “arise under and are expressly preempted by the Medicare Act, as amended by the MMA, which mandates administrative appeal prior to judicial review only in the federal courts.” BCBS’s *162 petition, at 8. BCBS goes on to argue that “[t]he Medicare Act’s administrative review process is mandatory and requires presentment [of claims] and exhaustion” of administrative remedies. BCBS’s petition, at 8.
The United States Supreme Court has stated: “The third sentence of 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that § 405(g), to the exclusion of 28 U.S.C. § 1381, is the sole avenue for judicial review for all ‘claim[s] arising under’ the Medicare Act.” Ringer, 466 U.S. at 614-15. Section 405(g) provides, in pertinent part:
“Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice on such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or his principal place of business .... The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing.... The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions.”
The MMA specifically provides that the judicial review of Medicare Advantage claims must be pursuant to § 405(g). See 42 U.S.C. § 1395w-22(g)(5) (“An enrollee with a [Medicare Advantage] plan of a [Medicare Advantage] organization ... who is dissatisfied by reason of the enroll-ee’s failure to receive any health service to which the enrollee believes the enrollee is entitled ... is entitled ... to a hearing before the Secretary [of the Department of Health and Human Services] to the same extent as provided in section 405(b) of this title.... If the amount in controversy is $1,000 or more, the individual or [Medicare Advantage] organization shall ... be entitled to judicial review of the Secretary’s final decision as provided in section 405(g) of this title.”).
“[T]he exhaustion requirement of § 405(g) consists of a nonwaivable requirement that a ‘claim for benefits shall have been presented to the Secretary,’ and a waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant.” Ringer, 466 U.S. at 617 (citation omitted). “[T]he exhaustion requirement ... is a prerequisite to jurisdiction under that provision.” Id.
In Ringer, the Supreme Court determined that claims “arise under the Medicare Act” for the purposes of § 405(h) if “the Medicare Act provides both the substance and the standing” for the claim, 466 U.S. at 620, or if the claims are “inextricably intertwined with what ... is in essence a claim for benefits” under the Medicare Act. 466 U.S. at 624. In Ringer, the complainants sued the Secretary of Health and Human Services, seeking “a declaration that the Secretary’s refusal to find that BCBR surgery [a surgical procedure known as bilateral carotid body resection] [was] ‘reasonable and necessary’ under the [Medicare] Act [was] unlawful, an injunction compelling the Secretary to instruct her intermediaries to provide payment for BCBR claims, and an injunction barring the Secretary from forcing claimants to pursue individual administrative appeals in *163 order to obtain payment.” Ringer, 466 U.S. at 611.
The Supreme Court concluded that, although the claimants had “[a]rguably ... assert[ed] objections to the Secretary’s ‘procedure’ for reaching her decision,” their claims were, “at bottom, a claim that they should be paid for their BCBR surgery.” Ringer, 466 U.S. at 614. The Supreme Court went on to conclude that “th[e] claims [were] inextricably intertwined with what ... [was] in essence a claim for benefits and that § 1331 jurisdiction over all their claims [was] barred by § 405(h).” 466 U.S. at 624.
BCBS argues that Southern Springs’ claims in this case are “inextricably intertwined with Medicare coverage,” because “Southern Springs’ complaint is based on [BCBS’s] alleged failure to provide coverage and benefits under Medicare.” BCBS’s petition, at 11. Southern Springs argues, however, that its claims are “ ‘wholly collateral’ to a claim for Medicare benefits,” Southern Springs’ brief, at 11, and are, “[a]t bottom, ... claims ... for payments pursuant to a contract between private parties.” Id. at 13-14.
In its complaint, Southern Springs stated, in pertinent part:
“Because persons insured under the Blue Advantage plan are Medicare beneficiaries, a material term of the [contract] between [BCBS] and [Southern Springs] is that [BCBS] must provide the same basic benefits and coverage to a Blue Advantage insured as Medicare would provide....
“... To refuse or limit coverage for Medicare-covered services is a material breach of the [contract], as well as a breach of a legal duty that [BCBS] owes [Southern Springs] and the putative class.
“Determining whether Medicare covers a particular healthcare service performed by a skilled nursing facility is a simple process. Medicare has developed guidelines and payment schedules known as the Resource Utilization Group (‘RUG’) Guidelines.... If the patient’s condition falls into a certain RUG category, there is coverage under Medicare. This is automatic. It is not subject to debate or variation. The skilled nursing facility is then reimbursed by Medicare at pre-determined rates based on the applicable RUG categories.
“The RUG guidelines not only determine whether there is coverage, but also dictate how long coverage will be provided. For example, a nursing home resident requiring the use of a feeding tube automatically qualifies for one hundred (100) days in the skilled nursing facility under the RUG guidelines. This too is not subject to variation.
“However, in an effort to save money and maximize its profits, [BCBS] refuses to follow RUG guidelines when determining whether to cover a Blue Advantage insured for a particular service performed at a skilled nursing facility. Instead, [BCBS] utilizes claims management software developed and sold by the McKesson Corporation, which is a private, third-party claims management company....
“At its core McKesson’s care management plan software is a decision tree that generates coverage determinations and care management plans for [BCBS]. A [BCBS] claims adjustor simply accesses the McKesson website on the internet and supplies the relevant healthcare information about a particular Blue Advantage insured who has presented to a skilled nursing facility for care and *164 treatment. With a few clicks of the mouse, the McKesson system then issues a determination as to what services should or should not be covered, and for how long.
“The problem is that the McKesson system ... does not follow the RUG guidelines. In fact, the system is not at all consistent with the RUG guidelines, thereby covering fewer Medicare-covered services, providing fewer benefits and authorizing fewer days in skilled nursing facilities than Medicare....
“In sum, [BCBS], through its use of the McKesson claims management system, does not provide its Blue Advantage insureds with the same coverage for Medicare-covered services. This is a material violation of [BCBSJ’s legal and contractual duties owed to [Southern Springs] and the putative class.”
Although framed in terms of a contractual dispute between BCBS and Southern Springs, Southern Springs’ claim is, “at bottom,” a claim that the Blue Advantage enrollees are being denied coverage and/or benefits to which they are entitled under the Medicare Act. This is essentially a claim for benefits under the Medicare Act.[1]
The circuit court, in addressing Southern Springs’ claims, would have to determine the amount of Medicare coverage to which enrollees are entitled. Although Southern Springs argues that this determination is a “simple process,” the circuit court would nevertheless be required to evaluate enrollees’ conditions pursuant to the standards developed under the Medicare Act in order to determine which of the Revenue Utilization Group (“RUG”) guidelines applied and what coverage was required. Thus, Southern Springs’ state-law claims, like the claims in Ringer, are “inextricably intertwined” with questions of coverage and benefits under the Medicare Act and are, therefore, subject to the administrative processes and limited judicial review set forth in the Medicare Act. See Ringer, supra.
Southern Springs argues that its claims cannot arise under the Medicare Act, “[bjecause Southern Springs is not a [BCBS Medicare] Advantage plan enrollee [and, therefore], the appeal and grievance mechanisms established by the Medicare Act are not available to it.” Southern Springs’ brief, at 8. We disagree.
The Medicare Act expressly allows “[a]ny provider that furnishes, or intends to furnish, services to the enrollee” to request an organization determination as to the benefits to which an enrollee is entitled. 42 C.F.R. § 422.566(c)(1)(ii). “Organization determinations” are defined to include, among other things, “any determination made by [a Medicare Advantage] organization with respect to ... [t]he [Medicare Advantage] organization’s refusal to provide or pay for services, in whole or in part, including the type or level of services, that the enrollee believes should be furnished or arranged for by the [Medicare Advantage] organization.” 42 C.F.R. § 422.566(b) (emphasis added).
*165 Southern Springs clearly qualifies as a “provider” for the purposes of § 422.566(c)(1)(h), and its claims are alleged to have arisen from decisions by BCBS that are subject to organization determinations as defined in § 422.566(b). Under the Medicare Act, there is an administrative process for the review of “organization determinations ... regarding the benefits an enrollee is entitled to receive under a [Medicare Advantage] plan.” 42 C.F.R. § 422.566(a). That process can be initiated by “[a)ny party to the organization determination.” 42 C.F.R. § 422.578. Therefore, Southern Springs is entitled to avail itself of the administrative procedures provided pursuant to the Medicare Act.
Southern Springs relies heavily on RenCare, Ltd. v. Humana Health Plan of Texas, Inc., 395 F.3d 555 (5th Cir.2004), in support of its argument that its claims against BCBS do not arise under the Medicare Act and that the administrative procedures of the Medicare Act do not apply to its claims. In RenCare, Humana Health Plan of Texas, Inc. (“Humana”), contracted with the Department of Health and Human Services Centers for Medicare and Medicaid Services (“CMS”) to provide care to Medicare beneficiaries, pursuant to the Medicare + Choice (“M + C”) provisions found in Part C of the Medicare Act.[2] RenCare, Ltd., contracted with Humana to provide kidney dialysis to Humana enrollees, including the M + C enrollees. A dispute arose between Humana and RenCare over reimbursement for end-stage renal-dialysis services RenCare had provided to Humana enrollees. RenCare sued Humana in Texas state court, alleging breach of contract, detrimental reliance, fraud, and violations of state law.
Humana removed the case to federal court, which dismissed RenCare’s claims as they related to the M + C enrollees, “finding that RenCare had failed to exhaust its administrative remedies under the Medicare Act.” 395 F.3d at 557. RenCare appealed that judgment to the United States Court of Appeals for the Fifth Circuit (“the Fifth Circuit”), which reversed the district court’s judgment, concluding that “RenCare’s claims [fell] outside of the category of cases that arise under the Medicare Act.” 395 F.3d at 558.
The Fifth Circuit noted that, unlike the claimants in Ringer, the Medicare beneficiaries in RenCare “were not denied services or reimbursement for services. To the contrary, Humana approved of, and RenCare provided, the kidney dialysis services for which RenCare seeks payment.” RenCare, 395 F.3d at 558. The Fifth Circuit went on to note:
“[T]he government has no financial interest in the present case because it pays Humana a flat rate each month for Humana’s services to M + C enrollees, regardless of the services it renders to M + C beneficiaries. Irrespective of who ultimately prevails, the government will not receive or pay out funds. The dispute is solely between Humana and RenCare and is based on the parties’ privately-agreed-to payment plan.”
Id. The Fifth Circuit concluded: “With neither M + C enrollees nor the government having any financial interest in the resolution of this dispute, RenCare’s claims are not intertwined, much less ‘inextricably intertwined’ with a claim for Medicare benefits. At bottom, RenCare’s claims are claims for payment pursuant to *166 a contract between private parties.” 395 F.3d at 559.
The Fifth Circuit went on to state:
“Not only is this case significantly different from other cases in which courts have held that claims arose under the Medicare Act, but it appears that the administrative review process attendant to Part C does not extend to claims in which an enrollee has absolutely no interest.
“Part C and CMS’s implementing regulations establish mandatory administrative ‘appeals procedures’ for resolving disputes over ‘organization determinations.’ See 42 U.S.C. § 1395w-22(g); 42 C.F.R. §§ 422.560-422.622. Disputes over any other matter are not subject to the same appeals process to which organization determinations are subject, but, instead, have their own ‘grievance procedures.’ 42 C.F.R. §§ 422.562(a)(1)(i), 422.564. An organization determination is a decision by an M + C organization ‘regarding the benefit an enrollee is entitled to receive under an M + C plan ... and the amount, if any, that the enrollee is required to pay for a health service.’ 42 C.F.R. § 422.566. More specifically, an organization determination may be the M + C organization’s ‘refusal to provide or pay for services, in whole or in part, ... that the enrollee believes should be furnished or arranged for by the M + C organization.’ 42 C.F.R. § 422.566(b)(3). Enrollees have a right to a timely organization determination, 42 C.F.R. § 422.562(b)(2), and a right to appeal that decision through several levels of review. 42 C.F.R. § 422.562(b)(4)(i)-(vi). However, if an ‘enrollee has no further liability to pay for services that were furnished by an M + C organization, a determination regarding these services is not subject to appeal.’ 42 C.F.R. § 422.562(c)(2).
“As is evident from the regulations, the administrative review process focuses on enrollees, not health care providers, and is designed to protect enrollees’ rights to Medicare benefits. Here, Hu-mana’s failure to pay RenCare is not an organization determination subject to the mandatory exhaustion of administrative remedies. No enrollee has requested an organization determination or appeal. No enrollee has been denied covered service or been required to pay for a service. Rather, the M + C enroll-ees in this case bear no financial risk inasmuch as they have already received the services for which RenCare seeks reimbursement. In fact, there is a complete absence of M + C beneficiary interest in this dispute. The only interest at issue is RenCare’s interest in receiving payment under its contract with Humana.”
RenCare, 395 F.3d at 559-60.
Southern Springs argues that this Court should apply the RenCare rationale here because, it argues, like RenCare, this case involves a dispute between private parties and does not involve Medicare enrollees. Southern Springs also argues that, as in RenCare, the government has no interest in the outcome of this case because BCBS, like Humana, receives a lump-sum payment each month under Part C of the Medicare Act. BCBS argues, however, that RenCare is distinguishable because
“RenCare involved a dispute about the Medicare Advantage organization’s payment for covered services that were actually provided. Enrollees had no interest because they had both received the medical services and been relieved of financial responsibility for those payments by the provider. In fact, Ren-Care itself recognized that payment is *167 sues were left to private contract.... Here, on the other hand, Southern Springs alleged that [BCBS] has denied the coverage and benefits to begin with.... Southern Springs ... is not a Medicare Advantage enrollee and, absent the provision of services to enroll-ees, is not entitled to any payment from a Medicare Advantage organization. It is disingenuous for Southern Springs to argue that claims do not arise under the Medicare Act because it, rather than an enrollee, is requesting coverage allegedly due to the enrollee.”
BCBS’s reply brief, at 9-10 (emphasis in original).
We agree with BCBS that RenCare is distinguishable. RenCare sued Humana, seeking reimbursement for services already provided to the enrollees. There was no dispute in that case as to the scope of the services that the RenCare enrollees had received under the Medicare Act, nor did either party argue that the RenCare enrollees were entitled to more services than they had received.
Here, however, Southern Springs’ claims against BCBS relate directly to BCBS’s alleged “refusal to provide or pay for services” to which Southern Springs believes the BCBS Medicare Advantage enrollees are entitled under the Medicare Act. For example, Southern Springs alleged in its complaint that “patients who normally qualified for fourteen, eighteen, twenty-one and even one hundred days in the facility under Medicare’s RUG guidelines had coverage of services terminated by [BCBS] after only two or three days based on the McKesson [Corporation] system guidelines. [BCBS] has even cut off coverage prematurely for intensely sick patients who needed more time at the facilities for treatment and would have qualified for it under Medicare.” (Emphasis added.)
Thus, unlike RenCare, Southern Springs has alleged that the enrollees in this case were denied services. Moreover, this is not a dispute based exclusively “on the parties’ privately-agreed-to payment plan.” RenCare, 395 F.3d at 558. Instead, Southern Springs’ claims involve questions of coverage and compliance with the Medicare Act that, according to Southern Springs’ complaint, have affected Medicare Advantage enrollees and could affect future enrollees. Therefore, Southern Springs’ state-law claims, unlike the contract claims in RenCare, are inextricably intertwined with claims that arise under the Medicare Act and are subject to the administrative procedures and limited judicial review set forth in the Medicare Act. Furthermore, as noted previously, 42 C.F.R. § 422.566(c)(1)(ii) expressly allows a service provider, such as Southern Springs, to seek an organization determination as to the alleged refusal of a Medicare Advantage organization to provide required services. It was not necessary for the Fifth Circuit in RenCare to address this provision in its analysis of the payment issues presented in that case.[3]
Southern Springs also alleges that “the contract between BCBS and Southern Springs contains an' arbitration provision, which contradicts BCBS’[s] assertion that this dispute is subject to Medicare Act administrative review.” Southern Springs’ brief, at 30. However, Southern Springs *168 has provided no analysis and cited no case-law in support of this argument. Moreover, Southern Springs initiated a judicial action, and § 405(g) provides “the sole avenue for judicial review for all ‘claims arising under’ the Medicare Act.” Dial v. Healthspring of Alabama, Inc., 541 F.3d 1044, 1048 (11th Cir.2008).

Conclusion

For the foregoing reasons, we conclude that Southern Springs’ claims “arise under” the Medicare Act and are subject to the administrative procedures and limited judicial review set forth in 42 U.S.C. § 405(g). Therefore, we grant BCBS’s petition and issue a writ of mandamus instructing the circuit court to dismiss Southern Springs’ claims against BCBS.[4]
PETITION GRANTED; WRIT ISSUED.
MALONE, C.J, and STUART, BOLIN, MURDOCK, and SHAW, JJ., concur.
MAIN, J., recuses himself.

. As a Medicare Advantage organization, BCBS has contracted with the United States Department of Health and Human Services Centers for Medicare and Medicaid Services ("CMS”) to offer benefits to Medicare-eligible individuals. The contract between Southern Springs and BCBS specifically requires BCBS to comply with federal regulations: "The Parties acknowledge and agree that [BCBS] is responsible and accountable to CMS for functions and responsibilities described in regulations promulgated by CMS, including without limitation, 42 CFR § 422.1 et seq." It is one of those regulations that requires BCBS to “provide coverage of, by furnishing, arranging for, or making payment for, all services that are covered by Part A and Part B of Medicare." 42 C.F.R. § 422.101(a).

. "As part of the codification of the MMA, the name of Part C's Medicare managed-care program was changed from ‘Medicare + Choice’ to ‘Medicare Advantage.’ ” Harris v. Pacificare Life & Health Ins. Co., 514 F.Supp.2d 1280, 1290 n. 7 (M.D.Ala.2007).

. In contrast to the coverage required under a Medicare Advantage plan, CMS’s regulations leave payment terms to private agreement between Medicare Advantage organizations and providers: "Contracts or other written agreements between [Medicare Advantage] organizations and providers must contain a prompt payment provision, the terms of which are developed , and agreed to by both the [Medicare Advantage] organization and the relevant provider.” 42 C.F.R. § 422.520(b)(1).

. In light of our determination that Southern Springs’ claims arise under the Medicare Act and, therefore, are subject to the requirements of § 405(g), we pretermit consideration of the parties' arguments regarding complete or express preemption pursuant to 42 U.S.C. § 1395w-26(b)(3).